Peter **VAIRA** and Mary L. Vaira, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**No. 19,112.**

United States Court of Appeals, Third Circuit.

Argued April 1, 1971.

Decided June 18, 1971.

Louis Vaira, Pittsburgh, Pa., for appellants.

William K. Hogan, Dept. of Justice, Tax Division, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Bennet N. Hollander, Attys., Tax Division, Dept. of Justice, Washington, D. C., on the brief) for appellee.

Before FORMAN,* SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal is from a decision of the United States Tax Court, 52 T.C. 986, which found income tax deficiencies for the years 1959 and 1962. Presented here are questions relating to (1) the cost basis of real estate devised to taxpayer by his father, (2) a condemnation award to taxpayer from the Commonwealth of Pennsylvania which, he insists, included severance damages, and (3) the propriety of assessing penalties under section 6653(a) of the Internal Revenue Code of 1954 for negligent underpayment, and under section 6651 for failure to file a timely return.

Taxpayer's father died in 1940 and by will devised certain real estate and improvements thereon to taxpayer:

Item II. I give, devise and bequeath unto my son Pete Vaira, all the real estate with the improvements thereon, which I own on the west side of "new" Route #51, together with a piece of land on the east side of "new" Route #51 upon which my said son, Pete Vaira, has constructed a brick house. * * * The entire above bequest, however, to be subject to the provision that he pay unto my son, Robert Vaira, the sum of $12.50 on the 1st day of each month, until he has

paid unto him the sum of $2,000 dollars. And provided also that he, along with my son Steve Vaira, may keep, provide, maintain and support my wife Angelina Vaira, as long as she may live. This bequest not to include that which is mentioned in Item VII.

Item V. I give, devise and bequeath unto my beloved wife Angelina Vaira, my money which I have in Italy * * together with the right to live in, dwell in, occupy and use, with family maintaining family relationship, our home as long as she may live.

Under the will, taxpayer received 73 acres which included two gasoline service stations, and two other acres which included a house he had built prior to his father's death. The family dwelling which the mother was to occupy was not included in the real estate devised to taxpayer; it was owned by his brother Steve.

The source of the tax problems was eminent domain proceedings conducted by the Commonwealth of Pennsylvania in 1958. State highway construction involved the taking of much of the land on which the two service stations had been located. Taxpayer was left with a certain amount of frontage on the new highway which could be commercially usable after a significant amount of grading. In 1962, he received a total award of $174,522.88 from the Board of Viewers of Allegheny County, Pennsylvania. The sum of $90,750 had been paid by the state on account in 1959, and the balance of $83,772.88 after the viewers' award in 1962.

### A. The Cost Basis

The Tax Court found that taxpayer's cost basis in the land and improvements taken by the state totaled $20,430. This was based on the following findings: taxpayer's basis in the total real estate devised to him by his father amounted to $24,200, of which $12,100 was allocated to the condemned portion; his un-

---

* Judge Forman was ill at the time this opinion was filed. He may wish to file a separate opinion later.

adjusted cost basis in improvements was $9,250—$1,500 for one gas station, and $7,750 for the other—while depreciation totaled $920, leaving a total adjusted basis in the improvements of $8,330. Taxpayer's cost basis of $20,430 thus represented the sum of his basis in the land ($12,100) and improvements ($8,330).

In determining the cost basis, the Tax Court had the option of applying section 1014, the fair market value of the property at the time of the father's death,[1] or section 1012, a value based on purchase price or cost.[2] The court utilized the second method of computation. It determined his cost by totaling taxpayer's 222 monthly payments, at $100 per month, to his mother, together with $2,000 in payments to his brother Robert in accordance with Item II of the will.[3] The court concluded:

> Taking all of the various factors into consideration, we think there was a substantial equivalence between the fair market value of what Peter received and the anticipated payments he undertook to make and that no part of those payments should be treated as gifts.[4]

While taxpayer does not quarrel with this approach, he contends that the Tax Court failed to consider all the elements that went into his cost, including certain additional monies paid by him for "the support" of his mother under Item II of the will. In 1946 he expended $3,000 for a furnace and $600 for electrical wiring installed in the residence occupied by the mother. From 1941 to 1944, he spent $10,163.01 for the operation of his mother's farm at her request.

 Recognizing the settled Pennsylvania law that the acceptance of a devise of land, charged with payment of a legacy, creates a personal liability on the part of the devisee, Logan v. Glass, 136 Pa.Super. 221, 7 A.2d 116 (1939), aff'd per curiam 338 Pa. 489, 14 A.2d 306 (1940), taxpayer nevertheless argues that Items II and V of the will imposed charges on his land which were separate from or in addition to any personal liability. We experience extreme difficulty in accepting this argument. The tract upon which the mother's farm was located was devised not to taxpayer, but to his brother Steve. We are not persuaded that Pennsylvania law would impose a charge on land given to one devisee based on an obligation to contribute to the support of a life tenant (Item II) occupying land given to another devisee. Nor can we accept the theory that the improvements to the homestead and the operation of the farm were requirements imposed by Item V, giving to the mother the "right to live in, dwell in, occupy and use, with family maintaining family relationship, our home as long as she may live." In addressing itself to these contentions, the Tax Court found

> no way of determining, on the record before us, how much the farm contributed to Angelina's support. In any event, the most that it might have so contributed is the net profit from

---

1. SEC. 1014. *Basis of property acquired from a decedent.*
 (a) *In general.*—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death. * * *

2. SEC. 1012. *Basis of property—cost.*
 The basis of property shall be the cost of such property, except as otherwise provided. * * * The cost of real property shall not include any amount in

respect of real property taxes which are treated under section 164(d) as imposed on the taxpayer.

3. The court found that taxpayer's obligation to his brother and mother had been fully paid by the time taxpayer received his first partial payment for the condemnation.

4. The determination that the fair market value of the devised property was substantially equivalent to the payments was not ungenerous. The fair market value of *all* of the father's 196 acres of real estate, not including improvements, was reported on the Pennsylvania Inheritance Tax Return to be only $9,800.

the operations and not the gross cost thereof. Similarly, capital expenditures by Peter for improvements to the house in which Angelina lived (even if we were able to determine the amount thereof) cannot be considered as being for Angelina's support particularly since they were made to property owned by his brother, Steve. Without categorizing the foregoing expenditures as gifts, loans, or otherwise, it is enough for us to hold that they were not made in discharge of the obligations imposed upon Peter by his father's will.

■ It is well settled that the question of a taxpayer's cost basis is one of fact. Glimco v. Commissioner of Internal Revenue, 397 F.2d 537, 546 (7 Cir. 1968); Biltmore Homes, Inc. v. Commissioner of Internal Revenue, 288 F.2d 336, 339 (4 Cir. 1961); Fihe v. Commissioner of Internal Revenue, 265 F.2d 511 (9 Cir. 1958). Our review of such findings is narrowly limited, for the findings of the Tax Court are presumptively correct "and that the burden rests with the [appellant] to show that such findings are 'clearly erroneous' before this court may set them aside." Farcasanu v. Commissioner of Internal Revenue, 436 F.2d 146, 148 (D.C.Cir.1970), quoting Kemper v. Commissioner of Internal Revenue, 269 F.2d 184, 185–186 (8 Cir. 1959). We have concluded that taxpayer has not met his burden and, accordingly, we will not disturb the Tax Court's finding that the cost basis was $20,430.[5]

### B. Severance Damages

■ Upon the liquidation of property there is taxable gain to the extent the amount of money realized exceeds the adjusted basis of the converted property. In a condemnation proceeding in which only a portion of a taxpayer's property is involuntarily converted, the cost basis of the original tract is apportioned between that retained and that condemned. But when only a portion of the land is condemned, there may be damages to the land not taken. These are known as severance damages. For tax purposes, however, such damages are not included in calculating the amount received from the involuntary conversion of the condemnee's land, and they may not properly be considered as gain.[6]

The Tax Court concluded that no part of the $174,522.88 awarded to taxpayer represented severance damages to the remaining property. Appellant insists that $83,772.88, or nearly one-half of the payment, constituted severance damages.

Under the Pennsylvania Eminent Domain Code of 1964, the Board of Viewers, 26 Purd.Stat.Anno. 1–511(6) (Supp. 1971) and, following trial, the court, 26 Purd.Stat.Anno. 1–518(a) (Supp.1971) shall make a specific finding and allocation of the amount of the general award attributable to severance damages.[7] These provisions are new, having no counterparts under the prior Pennsylvania law in effect at the time of the viewers' award to taxpayer in 1962. "It

---

5. Taxpayer also contends that certain expenditures made by him after the condemnation qualify for a "replacement" under the Code, and that the Tax Court erred in computing these expenditures. 26 U.S.C. § 1033(a) (3) (A) provides that when a taxpayer replaces involuntarily converted property, "at the election of the taxpayer the gain shall be recognized only to the extent the amount realized upon conversion * * * exceeds the cost of such other property," rather than to the extent the amount realized exceeds the adjusted basis of the converted property. The Tax Court found that the maximum provable expenditures totaled an amount *less* than the adjusted basis in the condemned property. Thus, it found it unnecessary to determine whether these expenditures were in fact replacement costs. The question of the amount of alleged replacement expenditures is a factual one. Applying the "clearly erroneous" standard, we cannot say that the court erred in its calculations.

6. An award of severance damages is not, however, without tax consequences. When a taxpayer receives such damages, the award results in a reduction of the cost-basis of the retained property. When the severance award exceeds the remaining basis, the excess is taxable. G.C.M. 23698, 1943 Cum.Bull. 340.

7. Under the Code the jury must, as before, return an award of general damages; allocation for severance damages shall be made only by the court, following its re-

is quite clear that prior to this Act, neither viewers or courts had this power. Damages in this area of the law, as damages determined in other forms of actions, were general." Snitzer, Pennsylvania Eminent Domain § 518(a)-1 at 251 (1965). Brown v. Commonwealth, 399 Pa. 156, 159 A.2d 881 (1960).[8]

The absence under prior law of provision for a specific allocation for severance damages placed the Pennsylvania taxpayer in a difficult position. The Pennsylvania Joint State Government Commission's 1964 Report, Comment to 26 Purd.Stat.Anno. § 1–511, stated: "The Internal Revenue Service has taken the position that unless the award specifically indicates what portion of it is severance damages the entire award will be considered general damages. Rev. Ruling 59–173; Allaben v. Commissioner [of Internal Revenue] 35 B.T.A. [327] (1937)." The 1964 provisions were designed in part to alleviate this potential hardship.

Clause (6) [§ 1–511(6)] is new. It has been included because of the tax ramifications involved where there is a partial taking. The tax aspects which arise in connection with condemnation can have serious consequences to a condemnee, as severance damages have more favorable tax consequences than general damages. *Id.*

Subsection (a) [§ 5–118(a)] of this section is new and is designed to permit, upon request of the condemnee, the allocation of a general award between severance damages to the part of the property not taken and the damages for the part taken. Such allocation may result in definite advantages under the Federal income tax laws by permitting postponement or avoidance of Federal income taxes.

Comment to § 1–518.

In its opinion in these proceedings, the Tax Court, however, stated its belief that there was some relief available even prior to 1964: "But it does not follow that a Pennsylvania condemnation award necessarily cannot reflect an item of severance damages. Arch B. Johnston, 42 T.C. 880, 884 (1964). The test to be applied is whether the condemnation proceedings, including negotiations by way of settlement, clearly show that compensation for damage to the remaining land was in fact included." It concluded that the "facts herein simply do not meet the standard laid down by the decided cases."

 In our view, the Tax Court's belief in the availability of relief prior to 1964 was well-founded.[9] Certainly, this

---

ception of the general verdict. In so doing, the court may conduct a special hearing to determine severance damages. 26 Purd.Stat.Anno. § 1–518(a) and Comment thereto.

8. This is not to say, of course, that prior to the 1964 Code Pennsylvania did not permit the recovery of damages to the remaining property. On the contrary, the well-established test of damages has always been the difference in value between the whole tract of land before condemnation and the value of the remaining land after the condemnation.

The appraiser under prior law would testify that the value of the realty before the condemnation was $30,000.00, and the value of the realty after the condemnation was $10,000.00. The damage, therefore, was $20,000.00. The $20,000.00 represented the damage for the land actually taken *and* the damage to the land remaining. If the appraiser were asked what the damage in dollars

was for *only* the land taken, and the separate damage in dollars to the land remaining, an objection would have been sustained. (Pittsburgh Terminal Warehouse & Transfer Company v. Pittsburgh, 330 Pa. 72 [198 A. 632] (1938); Pusey v. City of Allegheny, 98 Pa. 522 (1881). Cf. Peterson v. Pittsburgh Public Parking Authority, 383 Pa. 383 [119 A.2d 79] (1955); Spiwak v. Allegheny County, 366 Pa. 145 [77 A.2d 97] (1950); Dougherty v. Allegheny County, 370 Pa. 239 [88 A.2d 73] (1952).)

Snitzer, *supra*, § 518(a)–2.1, at 252 (emphasis by the author).

9. For example, an amicable agreement between the condemnor and condemnee containing clear statements that a specific amount represents consequential damages generally will suffice. *See* Greene v. United States, 173 F.Supp. 868 (N.D. Ill.1959).

approach dispels some of the confusion emanating from the two-sentence Revenue Ruling 59–173 which is sometimes offered for the proposition that a general damages award by a Board of Viewers or a court will preclude the taxpayer from asserting an apportionment for severance damages. See Comment to § 1–511, *supra*. We believe that the ruling merely created a rebuttable presumption that put the burden on the taxpayer to demonstrate the existence and impact of severance damages. "When it is not clearly shown that the award included a specific amount as severance damages, it will be presumed that the proceeds were given in consideration of the property taken by the condemning authority." Rev.Rul. 64–183. The cases are not to the contrary. Arch B. Johnston, *supra;* L. A. Beeghly, 36 T.C. 154 (1961). Marshall C. Allaben, 35 B.T.A. 327 (1937), involved a private sale between the parties and did not entail court proceedings.

It remains for us to decide whether the Tax Court erred in holding that the taxpayer failed clearly to show that compensation for damage to the remaining land was in fact included in the Board of Viewers' award.

The board's chairman presented the following testimony:

Q. Then the after value, as a whole, you consider the damage done to the property as a whole, and some of the elements that are considered are the value of the land taken and the damage to the remaining land; isn't that correct?

A. That is correct.

Q. But under the law of Pennsylvania at that time, there was no way of separating them, or what the Internal Revenue Service called the severance damage, but we call the damage to the remaining property?

A. That is right, and we also call it severance damage under the Act of 1964.

Q. But at that time, that didn't even exist?

A. No, it did not.

Q. But it was an element, however, that you considered in arriving at the award?

A. Yes, we would certainly have that in consideration; as I said, not severance damage, as such.

Q. No, but it was an element?

A. Yes.

Q. I might say to you that the petition for the appointment of viewers in this case stated that the property had been depreciated in value and, of course, evidence was shown to prove that.

A. That is correct.

In its opinion, the Tax Court made no reference to this testimony that the Board of Viewers considered this item of damages in reaching its award. Moreover, the court made no mention of the testimony of Internal Revenue Agent Sladack that he saw a Pennsylvania State Highway Department report showing "about $12,000 as applicable to reduction of value of remaining land." The court apparently limited its consideration to testimony relating to cuts and fills, and rejected it.

█ The chairman's testimony clearly demonstrated that the Board of Viewers considered the damage to the remaining land as one of the elements in the award. The testimony of Agent Sladack that the State Highway Department reported a calculation of $12,000 severance damages can properly be construed as evidence of such damages. We hold that the taxpayer met his burden of rebutting the presumption of general damages. The Tax Court's finding that no portion of the condemnation award represented severance damages was "clearly erroneous."

C. Penalties

█ The Tax Court did not disturb the Commissioner's imposition of a penalty under section 6653(a).[10] This as-

10. SEC. 6653. *Failure to pay tax.*
 (a) *Negligence or intentional disregard of rules and regulations with respect to income or gift taxes.*—If any part of any

underpayment * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an

sessment was based on a finding that the taxpayer negligently failed to keep records of the replacement costs of the land and improvements affected by the taking. Asserting that he kept "very meticulous typewritten records" of moneys advanced for improving his mother's homestead and for operation of her farm, taxpayer seeks to justify his failure to keep records of replacement costs on the theory that neither the State of Pennsylvania nor the federal government, which funded the highway program, advised him that monies received from condemnation proceedings could be taxable. Rightly or wrongly, the government is not charged with the duty of imparting such information or of functioning as a tax advisor. It is the taxpayer's responsibility to ascertain his obligations.

 Because the Commissioner's imposition of the negligence penalty is presumptively correct, the taxpayer bears the burden of proving the assessment wrong. Gibbs v. Tomlinson, 362 F.2d 394, 399 (5 Cir. 1966); Cleveland Chiropractic College v. Commissioner of Internal Revenue, 312 F.2d 203, 207 (8 Cir. 1963); Boynton v. Pedrick, 228 F.2d 745, 746 (2 Cir. 1955). We agree with the Tax Court that taxpayer did not meet his burden.

An additional penalty was assessed under section 6651.[11] Taxpayer prepared and filed a return for 1962, accompanied

it with a check for payment of the calculated tax, but did not sign the return. The Commissioner treated the filing of the unsigned return as a failure to file a return required by section 6012,[12] and imposed the section 6651 penalty for "Failure to File Tax Return."

By statute a return is required to be signed in accordance with forms of prescribed regulations. 26 U.S.C. § 6061. Without a signature, a return is not verified and cannot be subject to the penalties for perjury mandated by the Code. 26 U.S.C. § 6065(a). Accordingly, it has been held that a return filed unsigned is no return at all. Dixon v. Commissioner of Internal Revenue, 28 T.C. 338 (1957).

It is not at all difficult for those of us not daily engaged in the often trying and sometimes amazingly zealous pursuit of collecting taxes to sympathize with taxpayer's position: although the return was not signed, it was accompanied by payment of the tax purported to be due, and the Commissioner, having accepted payment, should be estopped from asserting that no return was filed. Indeed, the government concedes that "it has been the policy of the Commissioner not to assert the delinquency penalty where the prescribed return was timely filed and accompanied by proper payment of the tax."

 We would be inclined to accept this argument if our standard of review were more expansive. But our authority

amount equal to 5 percent of the underpayment.

11. SEC. 6651. *Failure to file tax return.*
 (a) *Addition to the tax.*—In case of failure to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such fail-

ure continues, not exceeding 25 percent in the aggregate.
 (b) *Penalty imposed on net amount due.*—For purposes of subsection (a), the amount of tax required to be shown on the return shall be reduced by the amount of any part of the tax which is paid on or before the date prescribed for payment of the tax and by the amount of any credit against the tax which may be claimed upon the return.

12. SEC. 6012. *Persons required to make returns of income.*
 (a) *General rule.*—Returns with respect to income taxes under subtitle A shall be made by the following:
 (1) Every individual having for the taxable year a gross income of $600 or more. * * *

as an appellate court is limited to the question whether the Commissioner had the discretion to impose a penalty under such circumstances—even to the extent of extracting a seldom-invoked, draconian penalty of 25 percent.[13] The conclusion is compelled he had this power and we will not disturb the Tax Court's determination that the section 6651 penalty was authorized by law.

These proceedings will be remanded to the Tax Court for a new trial on the limited issue of the impact of severance damages. Upon a new computation of tax liability, the amount of penalties will be adjusted accordingly.

The decision of the Tax Court will be reversed and the proceedings remanded in accordance with the directions heretofore set forth.

13. The government brief, somewhat apologetically, supports the Commissioner's theory:

The entire record shows the taxpayer's total disregard of the tax law and its requirements. He kept no records of the transactions involved herein, he neglected to report a large receipt in his 1962 return ($83,772.88) and he failed to sign this return.

This may all be true. Nevertheless, the Commissioner assessed a separate penalty for failing to keep records. He imposed a substantial assessment on the $83,772.88. And taxpayer was not charged with avoidance or evasion of payment of taxes on this amount. The Tax Court found there was no willful neglect in the failure to sign the return. Under such circumstances the Commissioner's action, although by no means commendable, is not reversible.