RAYMOND T. K. AU HOY AND ROSE C. AU HOY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1292–71. Filed May 2, 1972.

*Arthur S. K. Fong,* for the petitioners.
*Charles W. Nyquist,* for the respondent.

HOYT, *Judge:* The respondent determined a deficiency of $7,948.13 in the petitioners' income tax for the year 1962.

The following issues are presented for our decision:

(1) Whether certain information contained in the petitioners' 1965 Federal income tax return constituted a "notification" sufficient to satisfy the requirements of section 1033(a)(3)(C) of the 1954 Code [1] and section 1.1033(a)–2(c), Income Tax Regs; and

(2) Whether the petitioners, prior to the end of 1964, reinvested in replacement property the proceeds received in 1962 from the condemnation of rental real estate.

A medical expense disallowance in the statutory notice is a mathematical adjustment which follows from the principal issue.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits thereto are incorporated herein by this reference.

The petitioners, Raymond T. K. Au Hoy and Rose C. Au Hoy, are husband and wife. At the date of the filing of the petition herein, they were both residents of Honolulu, Hawaii.

On September 20, 1962, the petitioners received $61,082.35 from the State of Hawaii as proceeds of a condemnation proceeding against rental property owned by them at 1510 Liliha Street, Honolulu, Hawaii. They realized a gain of $55,862.35 upon the transaction, no part of which was reported on their 1962 Federal income tax return.

On December 31, 1963, the petitioners applied to the Internal Revenue Service for an extension of time in which to secure replacement property; the petitioners anticipated taking advantage of the nonrecognition provisions of section 1033 of the 1954 Code. On January 7, 1964, pursuant to section 1033(a)(3)(B) of the 1954 Code, the Revenue Service granted the extension and advised the petitioners that they had until December 31, 1964, to replace the condemned property.

In 1963, the petitioners turned over $59,232.35, the net proceeds of the condemnation, to Willard M. P. Wong, their financial adviser, with the expectation that Wong would purchase replacement property for them.

Wong had been petitioner Raymond Au Hoy's stockbroker and financial consultant since 1951. The petitioners had absolute trust in his ability and integrity and had given him unlimited power to do as he wished in buying securities for them.

Although Wong received the net proceeds of the condemnation from the petitioners, he did not use these funds to buy replacement property for them prior to December 31, 1964.[2] Several years later, the petition-

---

[1] All section references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Wong testified that he sold two houses which he owned to the petitioners during 1964,

ers and Wong executed a document, entitled "Deposit Receipt, Offer and Acceptance," purporting to be an agreement by the petitioners to purchase from Wong two parcels of land and the buildings situated thereon, located in the Palolo section of Honolulu. The instrument bears the date of September 20, 1964, but it was actually not executed prior to May of 1967.[3]

The petitioners timely filed their joint Federal income tax returns for the years 1962, 1963, and 1964, but in none of these returns did they make any statement concerning the condemnation of their rental property.

In 1965, Samuel S. Cho, a certified public accountant, became Wong's tax consultant. In 1966, Cho prepared the petitioners' Federal income tax return for 1965. Cho considered amending the petitioners' 1964 return to add a notification of replacement of the property condemned in 1962. However, he decided not to amend the return. Instead, he added a page to the petitioners' 1965 return, which read in pertinent part as follows:

SCHEDULE VI

Raymond T. K. & Rose C. Au Hoy
Year 1965

| | |
|---|---|
| Condemnation award received from State of Hawaii | $61, 082. 35 |
| Basis of property condemn [sic] | 22, 492. 86 |
| Profit realized—condemnation of property | 38, 589. 49 |

---

although there was no formal documentation of the sale at that time. It is clear to us from our examination of the record that no such sale occurred.

Following the date of the alleged sale, Wong continued to use the houses as his own. For 2 years or more thereafter, he allowed his own employees to occupy the two houses, and he collected rent from at least one of the employees. Later Wong removed the houses and had new houses placed on the lots. In 1968, Wong pledged the houses as collateral for bank loans for his benefit without telling the bank that the petitioners owned the property and without consulting the petitioners. Wong at no time has rendered an accounting to the petitioners of the rental income or expenses in connection with the two properties. Petitioner Raymond Au Hoy has never seen either of the two properties and does not know whether there are buildings on the land or whether they are producing income.

Ledger sheets were introduced into evidence, and Wong identified them as coming from his personal files, having been prepared under his supervision. Among other things, these sheets purport to show that the two properties in question were purchased on Sept. 20, 1964, with the proceeds of the condemnation award (leaving a balance due of approximately $10,000). Wong testified that the entry reflecting the Sept. 20, 1964 "purchase" was made on or about that date. However, there is strong evidence in the record establishing that the bookkeeping form upon which this entry was made was not in print prior to 1968. We therefore are unable to give any evidentiary weight to the ledger sheets.

In view of the forgoing discussion, we must conclude that no sale took place in 1964.

[3] Petitioner Raymond Au Hoy testified that the document was executed about Sept. 20, 1964, and Wong testified that it was executed at the end of 1965 or early in 1966. Neither witness was credible on this point in view of strong evidence in the record that (1) the street name "Ipulei Place" appearing on the instrument was not adopted by the Honolulu City Council until Mar. 22, 1966, and (2) the standard form on which the petitioners and Wong prepared their "agreement" was not in print prior to May of 1967.

SCHEDULE VII

Basis of New Investment Property
Palolo Rental Lots

Cost of Palolo property_____ $70, 000. 00
Less profit realized from condemnation of property_____ 38, 589. 49

Basis of new property_____ 31, 410. 51

In his statutory notice to the petitioners, dated November 30, 1970, relating to the taxable year 1962, the respondent stated:

It has been determined that you did not purchase replacement property within the period specified in section 1033 of the Internal Revenue Code of 1954, as extended by agreement. Therefore, the long-term capital gain of $27,931.17 (50% of the total gain of $55,862.35) realized on condemnation of your property is includible in your income.

Since you did not notify the District Director of Internal Revenue of the acquisition of the replacement property as required by Regulations 1.1033(a)-2(c)(5) of the 1954 Code, the statute of limitations does not bar assessment of a deficiency in income tax for the calendar year 1962.

ULTIMATE FINDINGS OF FACT

No notification was given to the Secretary or his delegate in the manner prescribed in section 1033(a)(3)(C) of the 1954 Code and section 1.1033(a)-2(c), Income Tax Regs., of the replacement of the petitioners' property which was condemned in 1962.

The petitioners did not acquire property prior to the end of 1964 to replace the property for which they received a condemnation award in 1962.

OPINION

This case arises under section 1033 of the 1954 Code, which section provides, in general, that "If property (as a result of its * * * condemnation * * *) is compulsorily or involuntarily converted * * * [i]nto money * * * after December 31, 1950, the gain (if any)" shall, at the election of the taxpayer, not be recognized "If the taxpayer * * *, for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted" within a specified period of time.[4] Section 1033(a)(3)(B) provided during the years here pertinent that the converted property must be replaced within "one year after the close of the first taxable year in which any part of the gain upon the con-

---

[4] If the amount realized upon the conversion exceeds the cost of the replacement property, gain will be recognized to the extent of the excess. Sec. 1033(a)(3)(A).

version is realized"[5] unless an extension had been applied for by the taxpayer and granted by the Secretary or his delegate.

In the case at bar, the petitioners' rental property was condemned and involuntarily converted into money on September 20, 1962. The petitioners made no mention of the condemnation award or their gain on their Federal income tax return for 1962.[6] On December 31, 1963, the petitioners applied for an extension of time within which to secure replacement property, and a week later the Revenue Service granted an extension to December 31, 1964.

The first issue for our decision involves section 1033(a)(3)(C), which states that the statutory period for the assessment of a deficiency attributable to a gain falling within the purview of section 1033 "shall not expire prior to the expiration of 3 years from the date the Secretary or his delegate is notified by the taxpayer (in such manner as the Secretary or his delegate may by regulations prescribe) of the replacement of the converted property."

The petitioners argue that they notified the Commissioner of the replacement of the converted property in their income tax return for 1965 and that, when the statutory notice of deficiency was sent to them on November 30, 1970, the special 3-year period of limitation contained in section 1033(a)(3)(C) had expired. The respondent argues that the statement attached to the 1965 return did not constitute a valid notification under the applicable regulations and that, in the absence of such notification, the period of limitations contained in section 1033(a)(3)(C) had not even begun to run when the statutory notice was issued.

We agree with the respondent. Section 1033(a)(3)(C) makes it clear that in order for a notification to be effective under the statute, it must comply with the requirements of the regulations. The regulations provide that the "notification should be made in the return for the taxable year * * * in which the replacement occurs" and that the "notification shall contain all the details in connection with such replacement." Sec. 1.1033(a)—2(c)(5), Income Tax Regs.

It seems obvious to us that a statement attached to a 1965 tax return, dealing with an alleged 1964 replacement of property, does not satisfy the clearly stated requirement in the regulations that the "notification should be made on the return for the taxable year in

---

[5] This period has been subsequently extended to 2 years by sec. 915(a) of Pub. L. 91–172 (Dec. 30, 1969).

[6] The petitioners' failure to report the gain on their 1962 return constituted an election by them to have the condemnation and related transactions fall within the ambit of sec. 1033. See sec. 1.1033(a)—2(c)(2), Income Tax Regs. and *James River Apartments, Inc.*, 54 T.C. 618 (1970), affirmed per curiam 440 F. 2d 412 (C.A. 4, 1971). However, as we observe later in the opinion, we do not believe they qualify for the benefits of that section.

which the replacement occurs." Furthermore, the statement filed with the petitioners' 1965 return does not, as can be seen from our findings, "contain all of the details in connection with such replacement." The statement does not adequately identify the replacement property and it omits such basic elements as the identification of the property condemned, the year of the condemnation, and the year of the replacement. There is nothing to indicate that anything other than a 1965 transaction was being reported.

We hold that the petitioners did not satisfy the notification requirements of section 1033(a)(3)(C) and that the special statute of limitations contained in that section had therefore not expired when the statutory notice was issued on November 30, 1970. Cf. *James River Apartments*, 54 T.C. 618 (1970), affirmed per curiam 440 F. 2d 412 (C.A. 4, 1971); *Peter Vaira*, 52 T.C. 986, 1003 (1969), reversed on another issue 444 F. 2d 770 (C.A. 3, 1971). Accordingly, the respondent is not barred from assessing the deficiency herein.

We next consider the petitioners' contention that they reinvested the proceeds of the 1962 condemnation award in replacement property prior to the end of 1964 and are therefore entitled to the nonrecognition benefits of section 1033.

We have carefully examined the record and have concluded that the petitioners did not acquire replacement property by December 31, 1964. As we pointed out in footnotes 2 and 3, the various documents that were placed in evidence by the petitioners and represented to be contemporaneous records of an alleged purchase of rental property in 1964 were actually prepared several years later and serve to establish nothing more than the witnesses' distinct lack of credibility. No formal documentation of a 1964 acquisition is before us.

What the record does show is that the properties allegedly acquired in 1964 remained in the possession of the purported seller, Wong, who exercised full rights of ownership over the properties and never rendered an accounting to the petitioners. Up to the date of the trial in this case, the petitioner Raymond Au Hoy had never seen what he supposedly purchased over 6 years earlier. He was not even sure whether there were buildings on the land or whether they were producing income.

We hold that the petitioners did not purchase the properties in question in 1964, and, while the issue is not before us, we are not convinced that the petitioners have *ever* effected such a purchase. Accordingly, we uphold the respondent's determination that section 1033 does not apply in this case and that the petitioners' $27,931.17 long-term capital gain (50 percent of the $55,862.35 realized upon the condemnation) is includable in their income in 1962.

*Decision will be entered for the respondent.*