EMORY D. STINE and ESTATE OF VIOLET R. STINE, DECEASED, EMORY D. STINE, ADMINISTRATOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stine v. Commissioner
Docket No. 3682-74.
United States Tax Court
T.C. Memo 1976-339; 1976 Tax Ct. Memo LEXIS 62; 35 T.C.M. (CCH) 1556; T.C.M. (RIA) 760339; November 10, 1976, Filed Emory D. Stine, pro se. Gerald V. May, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $2,460 in the Federal income tax for 1970 of petitioner Emory D. Stine and his wife, Violet R. Stine, who is now deceased. The issues presented for our determination are: 1. What is the amount, if any, of the long-term capital gain realized by petitioners from an award received during 1970 on the condemnation in 1964 of a portion of their real property by the Commonwealth of Pennsylvania? 2. Whether petitioners' claimed farm loss deduction is allowable. FINDINGS OF FACT Petitioner Emory D. Stine was a legal resident of Harrisburg, Pennsylvania, at the time the petition herein was filed. His wife, Violet R. Stine, died on January 17, 1974, and Emory (hereinafter referred to as petitioner) is the administrator of her estate. *64 1. The Condemnation Award.
On April 5, 1943, petitioner purchased 3 tracts of land totaling 52.29 acres [1]/ in Swatara Township, Dauphin County, Pennsylvania, for about $7,000. On the property when acquired were a 2-1/2-story frame dwelling house, bank barn, and other buildings, all of which were in poor condition. Petitioner rebuilt some of the existing structures and constructed new facilities and used the property for the operation of a dairy farm. On May 20, 1964, 12.67 acres of petitioner's property were condemned by the Commonwealth of Pennsylvania for use as part of the right-of-way for an interstate highway. Of the remaining 39.62 acres, 4.38 acres were located on the west side of the condemned acreage and 35.24 acres were on the east side. The interstate highway had only limited access, and the nearest *65 crossway from the 4.38-acre tract to the 35.24-acre tract was several miles away. On May 20, 1964, the following structures were located on the 52.29-acre property: 1. A 2-1/2-story farm house 2. Laundry and butcher shop 3. Hog pen and chop building 4. Corn crib 5. Oil shed 6. Chicken house
7. Toilet 8. Frame garage 9. Concrete block implement shed 10. Frame barn 11. Silo The hog pen and chop building, corn crib, oil shed, and chicken house were located on the strip taken in the condemnation proceeding. The close proximity of the highway to the other buildings adversely affected their value. In 1970 petitioner received a condemnation award of $26,250, representing a total rounded figure of $10,762 in payment for the property taken and $15,481 in severance damages to his remaining property. Subsequently, a board of viewers was appointed by the Court of Common Pleas of Dauphin County, Pennsylvania. A hearing before the viewers was held on January 3, 1973, and on April 26, 1974, the viewers filed a report awarding further damages in the amount of $37,500. The $37,500 award was appealed by both parties, and the ensuing litigation resulted in *66 a jury verdict on October 2, 1974, in favor of petitioner, in the amount of $80,000. Detention damages (interest) were awarded petitioner in a separate finding by the jury. The verdict was molded by stipulation to show damages at $80,000 plus $43,365 in detention damages or a total gross award of $123,365, from which was to be deducted the foregoing $26,250 payment, resulting in a net additional award of $97,115 due petitioner. On October 4, 1974, the Department of Transportation of the Commonwealth of Pennsylvania filed a motion for new trial, and, when the instant case was tried, the condemnation case was on appeal to the Pennsylvania Commonwealth Court. Petitioner was unable to establish the cost of each building located on the condemned 12.67 acres but was able to establish the total cost of all such buildings, which were constructed during three separate periods. The total cost, less allowable depreciation, is as follows: Period 1944-1945
Cost
$8,908.00
$8,908.00
Salvage (10 percent)
- 891.00
Depreciable basis
(40-yr. useful life)
$8,017.00
Depreciation percent
.025
Yearly depreciation
$ 200.425
Years of use
20
Allowable depreciation
4,008.00
Remaining basis
$4,900.00
Period--1946
Cost
$4,144.00
$4,144.00
Salvage (10 percent)
- 414.00
Depreciable basis
(40-yr. useful life)
$3,730.00
Depreciation percent
.025
Yearly depreciation
$ 93.250
Years of use
18
Allowable depreciation
1,678.00
Remaining basis
$2,466.00
Period 1953-1954
Cost
$3,754.00
$3,754.00
Salvage (10 percent)
- 375.00
Depreciable bsis
(40-yr. useful life)
$3,379.00
Depreciation percent
.025
Yearly depreciation
84.475
Years of use
10
Allowable depreciation
845.00
Remaining basis
$2,909.00
*67 Petitioner has never claimed depreciation deductions in respect of any of the buildings located on his farm. He kept no documentation and was unable to establish the exact cost of those buildings which were not taken in the condemnation. By check dated January 8, 1974, petitioner made a deposit of $1,285 on a steel building to be erected on his remaining property. The building was ordered from the manufacturer pursuant to a purchase order dated January 14, 1974, with actual delivery occurring on June 20, 1974. Other improvements to the remaining property, the total cost of which was $11,950, included the installation of 775 lineal feet of chain link fencing and 200 lineal feet of guard rail fencing and the replacement of a septic system. However, these improvements were not made until sometime in 1974. In the statutory notice of deficiency, respondent determined that the entire amount of the award of $26,250 was allocable to the condemned 12.67 acres, and he subtracted from that amount attorneys' fees of $4,650 and land cost of only $565, arriving at a longterm capital gain of $21,035. Petitioner did not use the condemnation proceeds to acquire replacement property as provided *68 by section 1033, [2]/ and respondent determined that $10,517 (after the section 1202 deduction) capital gain was fully taxable for 1970. Subsequent to the trial of this case, respondent recomputed the amount of the long-term capital gain by accepting the Pennsylvania Department of Transportation's apportionment of the $26,250 award between payment for the property taken and severance damages to the property remaining; he now contends that, for the taxable year 1970, petitioner realized no gain on the portion of the award allocable to the property taken and $10,613 on the portion allocable to the property remaining (before allowing the section 1202 deduction). 2. The Farm Loss Issue.
Because of the condemnation of his property, petitioner was forced to discontinue his dairy operation. In 1966 he began to raise some beef cattle on the property, starting with 8 or 9 animals. During 1970 petitioner was raising about 10 beef cattle, and by 1976 his herd had increased to approximately 50. Throughout the years 1968 through 1973, *69 petitioner purchased beef cattle in 1973 only, when he bought 26 steers for $2,850.25 plus $100 sales tax. The only reported sale of livestock for those years occurred also in 1973, when petitioner allegedly sold 6 cattle for $2,500. For taxable years 1968 through 1973, petitioner reported net farm losses as follows: Total
Total Deducted Year
Farm Income
Farm Expenses
Net Farm Loss
1968
$7,926.88
$15,408.10
($ 7,481.22)
1969
166.85
1,847.00
( 1,680.15)
1970
0
10,245.08
( 10,245.08)
1971
0
3,900.77
( 3,900.77)
1972
0
6,277.16
( 6,277.16)
1973
2,500.00
8,321.75
( 5,821.75)
Petitioner had no bills or receipts of any kind to document the following expenditures claimed as deductions on his 1970 joint return: Expense Description
Amount Claimed
Repairs, maintenance - bldgs.
$ 1,220.00
Farm machinery
895.38
Feed purchased
5,550.00
Gasoline, fuel, oil
80.00
Taxes - Insurance
1,014.95
Utilities
182.90
New elect. water system
1,301.85
Total
$10,245.08
In the statutory notice of deficiency, respondent denied petitioner's claimed farm loss deduction of $10,245 for 1970, determining *70 that the expenditures relating thereto did not result from the operation of a trade or business. OPINION 1. The Condemnation Award.
The rules for the taxation of condemnation awards were stated in broad terms in Vaira v. Commissioner,444 F.2d 770, 774 (3d Cir. 1971), modifying on other grounds 52 T.C. 986 (1969), as follows: Upon the liquidation of property there is taxable gain to the extent the amount of money realized exceeds the adjusted basis of the converted property. In a condemnation proceeding in which only a portion of a taxpayer's property is involuntarily converted, the cost basis of the original tract is apportioned between that retained and that condemned. But when only a portion of the land is condemned, there may be damages to the land not taken. These are known as severance damages. For tax purposes, however, such damages are not included in calculating the amount received from the involuntary conversion of the condemnee's land, and they may not properly be considered as gain. [Fn. ref. omitted.] In footnote 6, page 774, the court added: An award of severance damages is not, however, without tax consequences. When *71 a taxpayer receives such damages, the award results in a reduction of the cost-basis of the retained property. When the severance award exceeds the remaining basis, the excess is taxable. [Citation omitted.] To the extent the severance damage payments exceed the taxpayer's basis, they are realized gain despite the absence of a "disposition" of the property. Sec. 1.1001-1(c), Income Tax Regs.; Peter Vaira,52 T.C. 986, 999 (1969), modified on other grounds 444 F.2d 770 (3d Cir. 1971); see also Rev. Rul. 271, 1953-2 C.B. 36. Section 1033, as applicable to property involuntarily converted prior to December 31, 1969, generally allows a taxpayer to defer recognition of taxable gain resulting from the condemnation of property if, within one year of the end of the first taxable year such gain is realized or an agreed extended period, he purchases property similar or related in service or use of an equal or higher cost. In the instant case, petitioner did not purchase similar or related property within the one-year statutory period mandated by section 1033(a) (3)(B)(i)[3]/; nor is there any evidence of an extension of that one-year period *72 as provided by section 1033(a) (3)(B)(ii). Accordingly, petitioners have not met the section 1033 requirements for the deferment of the gain they realized upon receipt of the 1970 award. R.A. Stewart & Co.,57 T.C. 122 (1971). *73 Section 1231[4]/ prescribes the tax treatment for involuntary conversions of capital assets held for more than 6 months and of "property used in the trade or business." If the gains from an involuntary conversion of those assets exceed the losses from such a transaction (i.e., if there is a net gain), then section 1231 (a) treats each gain as a capital gain and each loss as a capital loss. If, on the other hand, there is a net loss, then section 1231(a) treats each loss as an ordinary loss and each gain as ordinary income. *74 It is clear that petitioner's condemned property and the remaining property damaged by the condemnation qualify as section 1231 assets. Therefore, the issue involves the proper computation of gains and losses resulting from the involuntary conversion and the application of section 1231 to those gains and losses. As is frequently true in cases in which taxpayers appear pro se, the evidence presented on behalf of petitioner as to his gains or losses resulting from the involuntary conversion is neither precise nor complete. Petitioner has resurrected records which reflect the construction costs for the buildings located on the condemned acreage but he has no similar records for the buildings situated on the remaining parcels. He has never taken depreciation deductions on his income tax returns in respect of any of the farm buildings. Yet his cost basis for all the buildings, except the residence, must be adjusted for the "allowable" depreciation thereon pursuant to section 1016(a)(2). In the statutory notice of deficiency, respondent determined that petitioner failed to report for 1970 a long-term capital gain of $21,035 derived from the condemnation of his land (after deductions *75 for land cost and attorneys' fees). [5]/ Respondent treated none of the receipts as payment for severance damages to the remaining acreage and buildings situated thereon. However, respondent now concedes that, in the light of allocations prepared in the office of the Chief Counsel of the Pennsylvania Department of Transportation, of the $26,250 condemnation award, $10,769 should be considered condemnation proceeds and $15,481 should be categorized as severance damages. *76 As computed by respondent, petitioner's total adjusted cost basis in the property taken in the condemnation by the Commonwealth of Pennsylvania is $10,840, calculated as follows: Basis of land taken
$ 565.00
Adjusted cost basis of
buildings taken: Period 1944-1945
4,900.00
Period 1946
2,466.00
Period 1953-1954
2,909.00
Total adjusted cost basis
$10,840.00
Respondent computed the total adjusted cost basis in the property remaining after the condemnation by the Commonwealth of Pennsylvania to be $1,768, as follows: Basis of land remaining
$1,768.00
Adjusted basis of
buildings remaining
0
Total adjusted cost basis
$1,768.00
Using those figures, respondent has calculated realized gain in 1970, as follows: Severance
Condemnation
Damages
Proceeds
Condemnation award
$15,481.00
$10,769.00
Less: legal fee [1]/
(3,100.00)
(1,550.00)
Net amount
$12,381.00
$ 9,219.00
Less: adjusted basis
in property
remaining
and/or taken
(1,768.00)
(10,840.00)
Long-term capital gain
$10,613.00 $0
*77 We accept respondent's computation, with two modifications. First, we disagree with respondent's allocation of petitioner's $7,000 cost basis of his farm property purchased in 1943. Respondent has allocated one-third of the $7,000 to the land and two-thirds to the residence and other buildings located on the property at that time. As discussed below, petitioner testified that of the buildings located on the property at the time of his purchase, there were an old house and a bank barn, both in bad condition and requiring substantial improvements. In our view the proper allocation should be two-thirds of the $7,000 purchase price ($4,667) to the land and one-third ($2,333) to the buildings on the property when it was acquired. The amount allocated to the land should be divided proportionately between the condemned and the remaining acreage. Second, respondent allowed no adjusted basis for the buildings damaged as a result of the taking of the 12.67 acres. In computing the severance damages of $15,481, the Chief Counsel's office of the Pennsylvania Department of Transportation treated $100 per acre as the economic damage to the remaining 4.79-acre tract ( $479) and $200 per acre *78 as the economic damage to the remaining 35.491-acre tract ($7,098), for total severance damages of $7,577 to the land. [6]/ The remainder of the amount of the severance damages was allocated to the buildings as follows: Percentage
of Valuation
Amount
Economic damage to: House
20
$1,732.00
Laundry and butcher shop
20
656.00
Implement shed
50
2,520.00
Frame barn
35
2,821.00
Silo
35
175.00
Total
$7,904.00
We think it is unfair and unjust to conclude, as does respondent, that petitioner is entitled to no adjusted basis in these buildings as an offset against the severance damage portion of the award. While it is true that petitioner has no records showing the original cost of these damaged buildings, he testified that the house and barn were not useable when he bought the land in 1943, stating that ants had eaten the framework of the house and "the weatherboarding was no good at all." The barn then on the property had fallen down. He rebuilt and remodeled *79 the entire 2-1/2-story house and constructed each of the above-noted buildings subsequently damaged by the condemnation. Descriptions of some of these buildings introduced into evidence indicate they wre substantial structures. The following table shows the period of construction, cost, and remaining basis, together with the approximate percentage of depreciation, of the buildings located on the condemned 12.67 acres as of the date they were taken: Approximate Period of
Remaining Depreciation Construction
Cost
Basis Percentage
1944-1945
$8,908.00
$4,900.00
50
1946
4,144.00
2,466.00
45
1953-1954
3,754.00
2,909.00
25
Taking into account these computations (reflecting depreciation) on the condemned buildings, to which respondent has agreed, and the facts that petitioner handled the trial pro se and that his testimony in this respect was entirely credible, we think the trial record as a whole shows that the award for the economic damages to the remaining buildings, paid to petitioner in 1970, did not exceed his adjusted basis in those structures as of the date of the taking. [7]/ *80 Cohan v. Commissioner,39 F.2d 540 (1930).
2. The Farm Loss Issue.
Our findings enumerate the deductions which petitioner claimed on his 1970 joint income tax return for the expenses he allegedly incurred in that year in growing beef cattle. Again, the evidence is incomplete and imprecise. Petitioner offered no bills or receipts or any other documentation of the alleged expenditures, and he did not testify unequivocally that he actually expended these amounts. Petitioner's only testimony supporting these deductions was to the effect that the amounts claimed were reasonable. Yet, although petitioner testified that he was raising only about 10 head of beef cattle in 1970, his claimed deductions in this single year amount to over $1,000 ( $550 per animal for feed alone) *81 per animal. His income tax returns for that year and for 1971 and 1972 report no farm income and for 1969 and 1973 show only $166.85 and $2,500, respectively. The 1973 income, according to the return, was derived from the sale of 6 beef cattle for $2,500 (compared with the deduction of $550 per animal for feed alone in 1970). In each of these years, 1969 through 1973, he claimed farm losses ranging from $1,680.15 to $10,245.08. The evidence describing the beef cattle operations is simply insufficient to enable us to apply the rule of Cohan v. Commissioner,supra, to these claimed deductions. We do accept petitioner's testimony as to the deduction for taxes. Even if he was not engaged in a beef cattle business in 1970, as respondent contends, he owned the land and buildings referred to in the discussion of issue 1. "As sure as death," he was assessed real property taxes on his land and buildings. He is entitled to a deduction under section 164 for any taxes he paid, regardless of whether his beef cattle operations constituted a trade or business in 1970. We hold that petitioner is entitled to a property tax deduction of $900. To reflect the foregoing, *82 Decision will be entered under Rule 155. Footnotes
1. /↩ The record contains discrepancies as to the acreage in petitioner's farm, in the tract condemned, and in each of the two remaining tracts. In making our findings, we have used the figures which, in the light of all the evidence, appear to be correct. The precise acreage figures are not important to the resolution of the litigated issues.
2. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the periods in issue, unless otherwise noted.
3. /SEC. 1033. INVOLUNTARY CONVERSIONS. (a) General Rule.-- If propety (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted-- * * *
(3) Conversion into money where disposition occurred after 1950.--Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph: * * *
(B) Period within which property must be replaced.--The period referred to in subparagraph (A) [relating to the acquisition of other property similar or related in service or use to the converted property] shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending-- (i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, * * *↩
4. /SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. (a) General Rule.--If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *↩
5. /Where a condemnation award is paid to a taxpayer in one year and the taxpayer litigates for an additional award not received until a later year, the payment made and received in the earlier year is taxable, subject to adjustments for the taxpayer's related expenses and basis for the condemned property. The condemnation and payment in the earlier year are taxable even though the owner-condemnee may later obtain an additional award. Estate of Jacob Resler,17 T.C. 1085, 1092↩ (1952). Thus, the possibility that petitioner may ultimately prevail in his litigation with the State of Pennsylvania for an additional award in respect of his condemned property does not defer the recognition of his gain in 1970.
1. /↩ The total legal fee of $4,650 is allocated 2/3 to the damages and 1/3 to the condemnation proceeds according to the amount of each portion of the award.
6. /↩ The acreage figures used in this computation do not accord with our findings, but the discrepancies, unexplained in the record, do not affect our conclusion.
7. /↩ In so holding, we make no findings as to the exact amount of petitioner's adjusted basis in those buildings. Hopefully, if petitioner ultimately succeeds in obtaining a larger condemnation award, which includes amounts for additional severance damages to the buildings remaining on his land, he will be able to ascertain and show more precisely the adjusted basis in such buildings.