HAROLD G. LEACH and BERNADETTE LEACH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leach v. Commissioner
Docket No. 1731-75.
United States Tax Court
T.C. Memo 1977-243; 1977 Tax Ct. Memo LEXIS 201; 36 T.C.M. (CCH) 998; T.C.M. (RIA) 770243; July 27, 1977, Filed *201 Held: (1) The petitioners' income determined by the cash expenditures method and by use of BLS "family budgets"; and (2) the addition to tax for negligence under sec. 6653(a), I.R.C. 1954, imposed for 1971. L. H. Mikeworth, for the petitioners. David J. Duez, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and addition to, the petitioners' Federal income taxes: Sec. 6653(a) [1] Year
Deficiency
Addition to Tax
1971
$18,944.86
$947.24
1972
5,369.88
Due to concessions by the parties, the primary issue remaining for decision *202 concerns the computation of the petitioners' income for the years in issue by reference to their expenditures during that period. Resolution of that issue turns on the following questions: (1) The amount of living expenses incurred by the petitioners during the years in issue; and (2) the amount of expenditures made by the petitioners prior to 1971 to acquire property which was seized by local authorities in 1973. In addition, we must decide whether the petitioners are entitled to a capital loss in 1972 for an alleged sale of a front-end loading machine and whether any part of their underpayment for 1971 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. At the time the petitioners, Harold G. Leach and Bernadette Leach, husband and wife, timely filed their petition herein, they resided in Becker, Minn. They timely filed their joint Federal income tax returns for 1971 and 1972 with the Internal Revenue Service at Ogden, Utah. During 1971, Mr. Leach was 33 years old, and Mrs. Leach was 31 years old. They had been married for *203 more than 14 years and had 5 children, whose ages ranged from 7 to 14. Mr. Leach was self-employed in 1971, working in the field of construction. The record does not disclose his occupation during 1972. Sometime in 1971, the petitioners sold their home in St. Louis Park, Minn., and received $9,299.52 as the proceeds of the sale. In May 1971, they purchased a multi-story home on 10 acres of land in Becker, Minn., for $46,000.00, making a cash downpayment of $28,761.07 and agreeing to monthly mortgage payments of $200. Becker is a rural community, 50 miles from Minneapolis, with a population of approximately 360. The petitioners pay $35 a month in real estate taxes. In connection with their move to Becker, they purchased two couches. During the years in issue, the petitioners owned two Buick automobiles--a 1967 Riviera and a 1971 Riviera--and a 1969 pickup truck. In pursuing his business activities, Mr. Leach drove to Minneapolis on a fairly regular basis and occasionally spent the night there. The petitioners maintained no checking accounts and paid their bills and made their purchases with cash or with money orders which they purchased from banks or the post office. *204 In general, they retained no records of their financial transactions and so stated to agents of the Commissioner. However, Mrs. Leach testified that shortly before the trial of this case, she found certain receipts and records with respect to a few months of 1971. On their 1971 Federal income tax return, the petitioners reported an adjusted gross income of $5,943 and no taxable income. In their 1972 Federal income tax return, all of their gross income, $78,360, was listed as "Miscellaneous income," and they reported taxable income to be $71,110. The source of such income was not otherwise described. They computed their 1972 tax liability by averaging their income and, in making that computation, stated that they had $1,137 of taxable income in 1970, $4,592 of taxable income in 1969, and no taxable income in 1968. In January 1973, the local authorities searched the petitioners' home and seized a substantial amount of property found therein. Thereafter, the Internal Revenue Service made a termination assessment with respect to the petitioners' tax liability for 1972 and levied upon such property.In January 1975, the Commissioner issued his notice of deficiency for the years *205 in issue and, because of the inadequacy of the petitioners' records, determined their income by totaling the expenditures made by them in those years. He determined that the petitioners had $54,833.59 of additional income in 1971, and that their income in 1972 was $3,009.51 less than the amount reported by them. In arriving at his total income figures for the years in issue, the Commissioner determined that in each year the petitioners spent $24,000 for living expenses. In addition, he determined that the seized property represented expenditures made by the petitioners in 1972 and that the amount thereof was $44,000, but he now concedes that the value is only $40,350. Finally, the Commissioner's determination of the petitioners' tax liability for 1972, using income averaging, resulted in a tax deficiency for that year because of his increase in their income for 1971. OPINION The petitioners agree that the Commissioner's use of the expenditures method for computing their income was proper; indeed, their attorney stated that he used such method to compute their tax liability for 1972 because of the inadequacy of their records. However, the petitioners dispute certain determinations *206 of the Commissioner regarding the amount of expenditures made by them during the years in issue: Specifically, they contend that they did not purchase all the seized property in 1972; they assert that property having a value of $4,000 was acquired by them prior to 1971, so that the Commissioner's income determination for 1972 should be reduced by such amount. Next, they contend that they did not spend $24,000 a year for each year in issue for living expenses; they argue that, including their mortgage payments, which the Commissioner separately included in their income, their expenses did not exceed $9,600 a year. We deal with each of these contentions in turn. The petitioners bear the burden of proving that they acquired $4,000 worth of the seized property prior to 1971. Rule 142(a), Tax Court Rules of Practice and Procedure. They attempted to carry that burden by their testimony in which they merely listed items that they said had been so acquired. However, they produced no records to substantiate the dates of the acquisition of such property, nor did they furnish any evidence of the circumstances surrounding the acquisition of such items to corroborate their claim. In view *207 of the generality of such testimony, we are not persuaded that they had acquired $4,000 worth of the seized property prior to 1971. Yet, since they were able to accumulate substantial funds to be used in the purchase of their Becker home, we are satisfied that they probably had accumulated some property prior to 1971. Using our best judgment--and resolving the doubts against the party who had the burden of proof--in accordance with the rule of Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930), we find the value of the property acquired prior to 1971 to be $2,000. Next, when the expenditures method of computing income is used, it is clear that amounts spent for living expenses must be taken into account (see Giddio v. Commissioner,54 T.C. 1530 (1970)), and the petitioners do not contend otherwise. However, they claim that they enjoyed a more modest standard of living than determined by the Commissioner, and according to the testimony of Mrs. Leach, who handled all household bills, the family's living expenses did not exceed $800 a month, including the mortgage payment on their home. Mrs. Leach testified that she in general did not have any *208 records to establish her claims regarding her family's budget, but she testified that shortly before the trial of this case, she found buried in a file drawer an old calendar for 1971, and that in the pockets of that calendar, she found receipts for some months in 1971. She does not specifically remember placing the calendar in that drawer, and she offered no explanation as to why she had the receipts for only certain months in 1971. The receipts reveal monthly expenditures of around $800, but we find them to be unpersuasive because, in our opinion, they are not complete and accurate. Such conclusion is based on the fact that there are no receipts for non is based on the fact that there are no receipts for numerous categories of household expenses, some of which are included in Mrs. Leach's testimony regarding her budget. For example, Mrs. Leach estimated that the cost of heating their large house in Minnesota was only $35 a month, but no receipts for heating costs were contained in those which were presented for the months of July through November 1971. No receipts were offered with respect to the costs of operating the petitioners' truck and two cars, nor is any estimate included *209 for her use of the vehicles in the budget she presented. Her budget contained an estimate of only $50 a month for Mr. Leach's automobile costs, a figure we find to be exceedingly low, given his frequent trips to Minneapolis and the other costs of operating and maintaining three vehicles, including a truck. Finally, the monthly food receipts varied widely, suggesting that they may not have been complete. Thus, we find unreliable Mrs. Leach's testimony regarding her family's budget. Nevertheless, we find ourselves unable to approve the Commissioner's determination of living expenses of $24,000 for each year, which he claims is based upon statistics compiled by the Bureau of Labor Statistics (BLS). [2] In Giddio v. Commissioner,supra, we approved the Commissioner's determination of living expenses when it was in fact based upon such data and when the taxpayer therein did not have adequate records to establish his living expenses. However, we find no support in the BLS data for the Commissioner's determination in this case. The data compiled by BLS and admitted into evidence supplies information relating to annual budgets for 4-person families [3] at three different *210 levels of living--a lower level, an intermediate level, and a higher level. In view of the petitioners' income in 1971 and 1972, the Commissioner was justified in using the budget for a higher level of living. On the other hand, the Commissioner was in error in using the budget figures stated for Minneapolis-St. Paul, Minn.; he should have used those given for "Nonmetropolitan areas" in North CentralUnited States. [4]
Excluding social security and personal income taxes, [5] the higher budget for the specified family in that area for 1971 is $11,611. *211 A similar computation for 1972 produces a budget of $12,026. However, such figures must be further adjusted because they are based upon a family of four. According to BLS, such figure should be multiplied by 110 percent to find the budget for a family such as the petitioners', consisting of a husband under 35, a wife, and 4 or more children, the oldest of whom is between 6 and 15. Hence, the BLS estimated living expenses for the petitioners are $12,772.10 in 1971 and $13,228.60 in 1972. [6]
The petitioners contend that such figures ought to be reduced because they included estimates for expenses which were not incurred by the petitioners--for example, they did not purchase life insurance. However, the BLS data consists merely of general estimates. With respect to some items, such as housing *212 costs, the figures estimated by BLS are below the actual expenditures of the petitioners. In our judgment, such underestimated amounts adequately offset any necessary adjustments for items which are included in the BLS budget, although not purchased by the petitioners. The next issue is whether the petitioners are entitled to a capital loss for 1972 for an alleged sale in that year of a Bobcat front-end loading machine. Each petitioner testified that such a machine was sold to a Mr. Howard Johnson in 1972 for only $800 because it developed mechanical trouble. Mrs. Leach tried to find a receipt for that transaction, but was unable to do so. In their 1971 Federal income tax return, Mr. Leach claimed depreciation on a Bobcat front-end loading machine, which he reported as having been acquired in May 1971 for $4,200. In computing the petitioners' income for 1971, the Commissioner included the purchase price of such machine as an expenditure made by them in that year, but that machine does not appear in the list of property seized in January 1973. In view of such facts, we are persuaded that it was sold in 1972 for $800, and we find that the petitioners sustained a loss of at *213 least $1,000, which we hold is a capital loss in accordance with the petitioners' contention to that effect. [7]
Finally, we must determine if any part of the petitioners' underpayment for 1971 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). The petitioners bear the burden of showing that they were not negligent and did not intentionally disregard the Commissioner's rules and regulations. Vaira v. Commissioner,444 F. 2d 770 (3d Cir. 1971), affg. on this issue 52 T.C. 986 (1969); Bixby v. Commissioner,58 T.C. 757 (1972); Rosano v. Commissioner,46 T.C. 681 (1966). At no time during their testimony did the petitioners explain why their income for 1971 was so substantially under-reported or what was the source of such income. Moreover, no explanation was offered for their *214 failure to keep books and records from which their income could be computed, as required by section 6001 and section 1.6001-1, Income Tax Regs. In fact, the petitioners offered no evidence on this issue. Hence, the Commissioner's determination on this issue must be sustained. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. In his brief, the Commissioner has abandoned the $24,000 figure used in his determination; yet, he offers no explanation as to how he reached the alternative figures, and we find none in the BLS data. ↩
3. The family is assumed to consist of an employed husband, age 38, a wife not employed outside the home, an 8-year old girl, and a 13-year old boy. ↩
4. "Nonmetropolitan areas" are defined to be places with a population of 2,500 to 50,000. Although the population of Becker was even less than such minimum figure, the petitioners do not object to the use of the data for a nonmetropolitan area in the North CentralUnited States.↩
5. We have excluded these items because the Commissioner has specifically included any amounts which the petitioners actually spent on taxes, so it is unnecessary to include estimates for these items. ↩
6. These amounts include the petitioners' housing costs; hence, the Commissioner will have to reduce his income computations by the amounts he allocated to the petitioners' housing costs.↩
7. A consequence of our conclusion that the petitioners received $800 of nontaxable income in 1972 from the sale of the Bobcat machine is that it provides a source for $800 worth of expenditures in that year, requiring, as the petitioners request, an $800 reduction in taxable income.↩