JOSEPH F. GALLAGHER AND MARY J. GALLAGHER, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6173–79.    Filed November 26, 1980.

*Vincent L. Alsfeld*, for the petitioners.
*W. Terrence Mooney*, for the respondent.

## OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioners' income tax and additions to tax as follows:

| Year | Deficiency | Addition to tax under sec. 6653(a) |
|---|---|---|
| 1976 | $7,271 | $364 |
| 1977 | 12,586 | 629 |

Concessions having been made by petitioners, the primary issue presented is whether certain payments to Joseph Gallagher (hereinafter Gallagher) while he was participating in the second-career training program, pursuant to 5 U.S.C. sec. 3381 (1966), should be excluded from petitioners' gross income as either workmen's compensation, under section 104(a)(1),[1] or pursuant to section 105(d). Also in issue are the additions to tax under section 6653(a).

Some of the facts in this case have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. The record also consists of certain exhibits admitted without objection as petitioners' exhibits by the Court's order dated June 27, 1980. There was no oral testimony so that the case is in effect fully stipulated.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

Petitioners resided in Hollis, N.H., at the time the petition herein was filed.

Gallagher was an employee of the Department of Transportation, Federal Aviation Administration (the FAA), since 1955. During a portion of his employment with the FAA, he served as an air traffic controller.

In early 1976, it was determined that Gallagher would be removed from his position as an air traffic controller because he suffered from a severe depressive reaction to a fatal air crash and was under medication. Gallagher requested and was approved for second-career training pursuant to 5 U.S.C. section 3381. His program of training was in hotel management and was to last 2 years.

Gallagher could have elected to apply for disability retirement. However, the processing of such an application would have been held in abeyance pending completion of the second-career training program. He was assigned to this program in April 1976 and completed his second-career training on or about June 30, 1978. During the 2-year training period, he was retained at his last assigned civil service grade and rate of basic pay as a controller and received increases in basic pay authorized by law.

Petitioners excluded $18,293 of the $29,736.81 in wages paid to Gallagher by the FAA during 1976. He excluded $29,737 of the $33,936.98 in wages paid him by the FAA during 1977. The amounts paid to Gallagher during his retraining period were paid by the FAA in its capacity as an employer.

In April 1978, Gallagher made a claim for compensation to the U.S. Department of Labor under the Federal Employees' Compensation Act (FECA). While his problem commenced in March 1975, he delayed filing his compensation claim until 1978 because he was in the second-career training program.

Section 104(a)(1) provides that, except in the case of amounts attributable to deductions allowed under section 213 for any prior taxable year, gross income does not include "amounts received under workmen's compensation acts as compensation for personal injuries or sickness." Section 1.104–1(b), Income Tax Regs., interprets the statute as also excluding amounts paid "under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment."

Petitioners argue that the payments made to Gallagher, which

were measured by the rate of his basic pay as a controller ("salary continuation"), were payments made in lieu of workmen's compensation and are, therefore, excludable under section 104(a)(1). Respondent counters that petitioners have not established that these payments were or should be recharacterized as being in the nature of workmen's compensation.

Congress established the second-career training program in 1972. Pub. L. 92–297, 86 Stat. 141 (Air Traffic Controllers Act). This program was created, in addition to special early retirement benefits,[2] in order to improve the quantity and quality of air traffic controllers. Congress, recognizing the mental and physical strain on the controller and its effect on the safety of air travel, sought to create incentives for hiring new controllers. Realizing that the controllers should not be retained beyond the time they can perform satisfactorily, but that their qualifications for other positions are very limited, Congress decided to ease the adjustment to a new career by providing training benefits while continuing the salaries of the former controllers. S. Rept. 92–774, U.S. Code Cong. & Adm. News 2287–2288 (1972). The statute provides, in relevant part, as follows:

(a) An air traffic controller with 5 years of service as a controller who is to be removed as a controller because the Secretary of Transportation has determined—
(1) he is medically disqualified for duties as controller;
(2) he is unable to maintain technical proficiency as a controller; or
(3) such removal is necessary for the preservation of the physical or mental health of the controller;

is entitled to not more than the full-time equivalent of 2 years of training.

(b) During a period of training under this section, a controller shall be—
(1) retained at his last assigned grade and rate of basic pay as a controller;
(2) entitled to each increase in rate of basic pay provided under law; and
(3) excluded from staffing limitations otherwise applicable.
(c) Upon completion of training under this section, a controller may be—
(1) assigned to other duties in the Department of Transportation;
(2) released for transfer to another Executive agency; or
(3) involuntarily separated from the service.

The involuntary separation of a controller under this subsection is not a removal for cause on charges of misconduct, delinquency, or inefficiency for purposes of [other sections] of this title.
[5 U.S.C. sec. 3381 (1966).]

---

[2]Gallagher was not eligible for these special early retirement benefits.

In addition to the benefits which Gallagher was entitled to receive under the Air Traffic Controllers Act, he was also entitled to claim eligibility for FECA benefits.[3] Petitioners were provided an opportunity by the Court to document their claim that Gallagher was seeking to recharacterize the benefits received under the Air Traffic Controllers Act as workmen's compensation (FECA benefits). The documents ultimately made part of the record, however, indicate that he was seeking disability retirement and FECA benefits in addition to the payments under the second-career training program, rather than in lieu of them.[4] Petitioners have not convinced us that Gallagher was attempting to have the "salary continuation" recharacterized as FECA benefits, much less that such recharacterization in fact occurred.

This gap in the record, however, does not resolve the ultimate question, which is whether the Air Traffic Controllers Act itself is either a workmen's compensation act or "a statute in the nature of a workmen's compensation act." See sec. 1.104–1(b), Income Tax Regs. We think this issue is controlled by *Blackburn v. Commissioner*, 15 T.C. 336 (1950). In *Blackburn*, a highway patrolman was entitled, in addition to workmen's compensation, to his salary for a period not to exceed 1 year during his absence attributable to injuries sustained in the line of duty. We focused on the intent of the California legislature and found the payments to be a means of compensation for the hazardous nature of the work. 15 T.C. at 339. As our previous discussion indicates (see pp. 314–315 *supra* ), the salary continuation in the instant case was provided by Congress for similar reasons. It did not limit the controller's right to receive other awards as compensation for personal injuries or sickness to which he might be entitled. Thus, we believe that these payments were more in the nature of the hazard pay in Blackburn than like workmen's compensation as in *Dyer v. Commissioner*, 71 T.C. 560 (1979).[5]

---

[3]Exhibit 13, which was the notice to Gallagher by the FAA to remove him from active air traffic control duties, clearly states that he might be entitled to benefits under FECA in addition to those afforded him under the Air Traffic Controllers Act.

[4]E.g., Exhibit 14, a letter from one of Gallagher's attorneys seeking reports filed by a doctor with the FAA regarding Gallagher's condition, states that Gallagher was trying to show that he was entitled "to benefits under the Workmen's Compensation Act over and above his present program."

[5]In *Dyer v. Commissioner*, 71 T.C. 560 (1979), we held that a regulation of the New York City Board of Education constituted "a statute in the nature of a workmen's compensation act."

The treatment accorded controllers in the second-career training program by the FAA further supports our conclusion. The FAA regards the controllers in retraining as employees subject to its supervision.[6] The salary payments continue only so long as the employee continues his retraining program; if he drops out, the payments stop. We think this is sufficient to prevent the payments from being characterized as compensation for personal injuries or sickness. While the payments may have been triggered by an injury or sickness, they are not meant to compensate for it. Cf. *Sidman v. United States*, 336 F. Supp 474, 478 (S.D. N.Y. 1971), affd. in an unpublished order (2d Cir. 1972, 29 AFTR 2d 72–908, 72–1 USTC par. 9447).

Petitioners argue, in the alternative, that part of the "salary continuation" payments made to Gallagher pursuant to 5 U.S.C. sec. 3381(b) should be excluded from income under section 105(d). Section 105(a) provides that amounts received by an employee through accident or health insurance for personal injuries or sickness are includable in gross income to the extent such amounts are attributable to contributions by the employer that were not includable in the gross income of the employee or are paid by the employer. Section 105(d) is an exception to the general rule in section 105(a). Section 105(d), as in effect during 1976,[7] stated–

(d) WAGE CONTINUATION PLANS.–Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. * * *

We find that section 105(a) (and, therefore, section 105(d) ) is

---

Unlike the air traffic controllers, however, teachers in the New York City schools were not covered by any regular workmen's compensation act. The regulation involved in Dyer was issued pursuant to authority under New York law requiring the board of education to provide workmen's compensation for its employees injured in the performance of their duties.

[6] The record clearly indicates (and petitioners do not argue otherwise) that during the period of his participation in the second-career training program, Gallagher was considered an employee not only in respect of continuation of his basic salary but also with respect to annual and sick leave, time and attendance records, etc. See also FAA Agency Order 3410.11A, May 16, 1975. Cf. *Winnick v. Commissioner*, 21 T.C. 1029, 1037 (1954), affd. per curiam 223 F.2d 266 (6th Cir. 1955).

[7] Assuming that Gallagher met the test of sec. 105(a), he could not comply with sec. 105(d), as in effect during 1977, because he was not "permanently and totally disabled" as that term was then defined in sec. 105(d)(5).

inapplicable to the facts presented in this case. While the finding that Gallagher was medically disabled may have triggered these payments, the payments continued only so long as he participated in the second-career training program as was required by his training contract. We agree with the conclusion reached by respondent in Rev. Rul. 75–119, 1975–1 C.B. 48, that this plan was an arrangement for the payment of amounts during a training period, rather than as health or accident insurance.[8] Cf. *Sidman v. United States, supra.*

The final issue presented is respondent's determination that the underpayment of tax was due to negligence or intentional disregard of the rules and regulations. Sec. 6653(a). The burden of proof is on petitioners. *Vaira v. Commissioner,* 52 T.C. 986, 1004 (1969), affd. on this issue 444 F.2d 770, 777 (3d Cir. 1971). Petitioners concede all of respondent's adjustments other than the income exclusion issue discussed above. They failed to present any evidence with regard to their treatment of the items involved, or otherwise with regard to the section 6653(a) additions to tax, nor did they make any arguments against such additions on brief. We, therefore, find that they have not carried their burden of proof on this issue and we uphold respondent's determination.

*Decision will be entered for the respondent.*

---

[8]Petitioners also seem to claim the benefits of sec. 104(a)(3). However, in addition to the reasoning set forth above, that section is not applicable because it excludes payments received from an employer or attributable to contributions by an employer, which is the case herein.