JACK MURRAY PUGH AND ELOUISE GROSS PUGH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pugh v. Commissioner
Docket No. 8383-83.
United States Tax Court
T.C. Memo 1985-67; 1985 Tax Ct. Memo LEXIS 565; 49 T.C.M. (CCH) 748; T.C.M. (RIA) 85067; February 13, 1985. Jack Murray Pugh, pro se. George E. Gasper, for the respondent. KORNER
*748 MEMORANDUM OPINION KORNER, Judge: Respondent determined the following deficiencies and additions to tax in petitioners' Federal income taxes for their tax years ended December 31, 1980 and December 31, 1981: *749 Tax year
Additions to tax
Petitioner(s)
ended
Deficiency
Section 6653(a) [1]
Jack Murray Pugh
12/31/80
$2,313
$115.65
Elouise Gross Pugh
12/31/80
429
Jack Murray Pugh
12/31/81
5,450
272.50
and
Elouise Gross Pugh
*568 By amended answer, respondent determined the following deficiencies in petitioners' Federal excise taxes under section 4972 for the same tax years: Tax year
Petitioner(s)
ended
Deficiency
Jack Murray Pugh
12/31/80
$360
Jack Murray Pugh
12/31/81
405
and
Elouise Gross Pugh
After concessions, the following issues remain for our decision: (1) Whether petitioners are entitled to deduct $2,250 for contributions to a qualified Keogh plan and $100 paid for a management fee for the plan on their joint return for 1981, and whether petitioner Jack Murray Pugh (hereinafter "Jack") is entitled to deduct $1,500 for contributions to a qualified Keogh plan on his separate return for 1980; (2) whether petitioners are liable for the excise tax for excess contributions under section 4972; (3) whether petitioners are entitled to a sales *3 tax deduction in 1981, in excess of the amounts permitted under respondent's general sales tax tables; (4) whether interest payments made in 1981 relative to a loan from Dallas Federal Savings, were attributable to Jack individually or as a partner in Pugh Realty Co.; (5) whether petitioners are entitled to a depreciation deduction *569 in 1981, in the amount of $1,041.57; (6) whether petitioners are entitled to charitable deductions for the donation of certain property as to both, in 1981, and as to Jack only, in 1980; (7) whether damage to petitioners' automobile resulting from an engine fire in 1981, constituted a qualifying casualty loss under section 165; (8) whether petitioners failed to report interest income for 1980 and 1981; (9) whether petitioners failed to report dividend income for 1980 and 1981; (10) whether petitioners were entitled to medical insurance expense deductions, as claimed, on their separate 1980 returns; (11) whether petitioners should each have reported a one-half community property share of Jack's naval pension income for 1980; (12) whether petitioner Elouise Gross Pugh (hereinafter "Elouise") is entitled to a residential energy credit for 1980; (13) whether petitioners have demonstrated error as to respondent's determination that they are each entitled to a one-half community property share of total employee business expenses of $411, for 1980; (14) whether petitioners were entitled to claim the zero bracket amount in addition to their itemized deductions during the years in issue; (15) *570 whether petitioners *4 are entitled to certain miscellaneous deductions for 1980 and 1981; (16) whether Jack is entitled to deduct an additional $384.57 in rental expenses for 1980; (17) whether petitioners are liable for additions to tax for negligence. While petitioners bear the burden of proof herein as to issues (1), and (3) through (17), it is respondent who bears such burden as to the new matter asserted in his amended answer, which is taken up in our consideration of issue (2). Rule 142(a). Following a brief section setting forth general findings of fact which are common to all issues herein, for convenience, we have combined our findings of fact and opinion as to each of the foregoing issues. GENERAL FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition in this case, petitioners resided at 2889 Millwood Circle in Dallas, Texas. For their taxable year 1981, petitioners were married and filed a joint Federal income tax return, with the Internal Revenue Service. For their taxable year 1980, Jack and *571 Elouise were married and each filed a separate Federal income tax return with the Internal Revenue Service. At all times here pertinent, Jack *5 was a full-time employee of J.C. Penney Co. and Elouise was employed full-time as a school principal. Issue 1. Keogh plan contributions and expenses
On his separate return for 1980, Jack claimed a deduction in the amount of $1,500, for payments to a Keogh (H.R. 10) retirement plan.On their joint return for 1981, petitioners claimed deductions in the amount of $2,250, for payments to a Keogh retirement plan, and in the amount of $100, for a management fee relative to such plan. Respondent disallowed such deductions in their entirety on the bases that petitioners were not eligible to make contributions to Keogh plans in such years, and failed to verify that any such contributions were made. Petitioners contend that Jack's activities with respect to, first, rental homes that he owns both individually and in partnership with his sister, second, a working interest in an oil well, and third, his naval pension, entitled them to make the Keogh contributions in issue. As to the alleged contribution in 1980, there is no evidence *572 on this record to show that any payments to a Keogh account were made by Jack in or for that year, and we sustain respondent's determination for such year on the basis. [2]
*6 As to the alleged contributions in 1981, however, petitioners produced receipts from the trust division of "Lakewood Bank," reflecting contributions to a numbered Keogh account in the amounts of $1,500 and $750, on the respective dates of April 14, 1981 and November 19, 1981; as well as a letter signed by a trust officer for "Allied Lakewood Bank," dated December 6, 1982, stating that a $100 trustee fee was received from Jack on December 17, 1981, relative to such account. Pursuant to section 401, as in effect for the year 1981, before contributions may be made to a qualifying trust, an individual must have "earned income," defined as being "net earnings" from self-employment (as defined by section 1402(a)), but only with respect to a trade or business in which *573 personal services rendered by the taxpayer are a material income-producing factor. Section 401(a), (c). For 1981, Pugh Realty Co., a partnership in which Jack was an equal partner with his sister, Carolyn Pugh Ranier, filed a partnership return, Form 1065. For such year, Pugh Realty, Co., reported income attributable to "savings certificate" interest and royalties, and losses attributable to a rental house located in Logansport, Louisiana. In 1981, Pugh Realty, Co. reported a not loss in the amount of $6,458.10. In addition, in his individual capacity, Jack owned a rental house in Dallas, with respect to which he devoted, on average, 6 to 7 hours per week of *7 his time. For 1981, petitioners reported a net loss with respect to such property. Since the income of Pugh Realty Co. in 1981, consisted solely of the Foregoing interest and royalties, the partnership had no "earned" income in that year. Moreover, it also had no "net earnings," but instead reported a net loss for 1981. [3]
It is also clear that Jack's naval pension does not *574 constitute "earned income" under section 401. Section 401(c)(2)(A)(i). Finally, Jack's activities relative to his individually owned rental house in Dallas, which occupied some 6 to 7 hours per week of his time, strike us as investment-related activities, rather than personal services which were a material income-producing factor. [4]
Since petitioners have failed to demonstrate that their foregoing activities generated earned income from self-employment, we must also sustain respondent's determination as to 1981. Section 4972(c). Issue 2. Excise tax
By amended answer, respondent asserted that petitioners were liable for an increased deficiency of $405 for 1981, and that *8 Jack was liable for an increased deficiency of $360 for 1980, as a result of their excise tax liability under section 4972. For the years in issue, section 4972 imposed a 6 percent tax on the amount of "excess contributions" for each taxable year, defined for owner-employees as the excess of the amount contributed for such taxable year over the amount permitted to be contributed. Section *575 4972(b)(2). In view of our resolution of Issue (1), supra, it is clear that while respondent has failed to meet his burden of proving Jack's liability for such excise tax for 1980, since there is no evidence to show that any contributions were made in that year; he has met such burden with respect to both petitioners for 1981. On this record, however, we are unable to uphold respondent's computation of the tax for 1981. [5] Petitioners reported contributions of $2,250 to the plan in 1981, and produced evidence to verify that such contributions were made. Since petitioners were entitled to contribute nothing to the plan in such year, we believe that the excise tax for petitioners in 1981, should be 6 percent of $2,250, or $135. Issue 3. Sales tax
On their joint income tax return for 1981, petitioners claimed a general sales tax deduction in the amount of $453.20. *9 Respondent disallowed such deduction to the extent it exceeded the amounts allowed by the general sales tax tables. Since petitioners failed to offer testimony or documentary evidence on this issue, we must sustain *576 respondent's determination. Issue 4. Interest expense
On their joint income tax return for 1981, petitioners claimed a deduction of $322.59 for interest paid to Dallas Federal Savings. [6] Respondent disallowed one-half of this deduction, or $161.29, on the basis that it was an expense of Pugh Realty Co., in which petitioner held a 50 percent interest, rather than of petitioner individually. In support of his position that he, rather then the partnership, borrowed and repaid the loan, petitioner relies solely upon his own testimony and the absence in the partnership return for 1981, of any reference to the interest expense. Jack's testimony on this point was perfunctory and ambigyous. Since we believe that such evidence is clearly insufficient to meet petitioners' burden, we uphold respondent's determination on this issue. Issue 5. Depreciation
On their joint income tax return for 1981, petitioners claimed a deduction for depreciation in the amount of $1,041.57, *10 and a total loss from rental property of $69.97. *577 On brief, respondent avers that he disallowed this deduction for depreciation in its entirety. However, in determining that petitioners had realized a gain of $674.59, rather than the loss claimed, respondent made an adjustment to such depreciation deduction, which he described as follows: Depreciation expense on your rental property is adjusted based on changes made to your 1980 tax return deduction. See attached Form 191. [7] Other rental expenses are allowed as verified. Based upon the foregoing, and upon our review of respondent's deficiency determinations against petitioners for 1980, as referenced in the foregoing language, we believe that respondent's determination of a gain of $674.59, rather than a loss of $69.97, rests upon his disallowance of the difference, consisting of only $744.56 of the total amount of $1,041.57 of depreciation claimed. As to this determination, petitioners offered no evidence, and we therefore sustain respondent, to the extent of $744.56. *11 Issue 6. Charitable contributions
On their joint income tax return for 1981, petitioners claimed noncash charitable contributions in the *578 amount of $500, of which all but $340.11 was disallowed for failure of substantiation. [8] On his separate return for 1980, Jack claimed a charitable contribution in the amount of $797.82, consisting of cash contributions, totaling $347.83, which were allowed, and a noncash contribution of $450, of which all but $46.17 was disallowed for failure of substantiation. Of the $394 allowed, one-half was allowed to Jack, and the other half to Elouise. Section 170 allows a deduction for a charitable contribution within the taxable year, but only if verified under regulations prescribed by the Secretary. Section 1.170A-1(a)(2)(ii), as in effect during the years in issue, prescribed the method of substantiation for contributions other than money by individuals. For deductions in excess of $200, that provisions required, inter alia, the date of the actual *579 contribution; a detailed description of the property; the manner of the taxpayer's acquisition of the property; its fair market value at the time of the contribution, including the method used in determining such value; the cost or other basis of the property; and the terms *12 of any agreement relating to the use, sale, or disposition of the property. Petitioners concede that they failed to comply with the foregoing substantiation requirements. Rather, the sole substantiation offered by petitioners consists of three receipts from Goodwill Industries of Dallas, and Jack's testimony. The receipts reflect solely the names and addresses of the donee organization, a general description of the property donated (i.e., "miscellaneous," "bags of clothing," or "furniture"), and an aggregate dollar figure, which was concededly written on each receipt by petitioner. At trial, petitioner could not identify most of the items which comprised each donation, and provided only the vaguest testimony as to the value of such few items as he could identify. It is clear that the evidence presented by petitioners as to the noncash contributions in 1980 and 1981, is grossly insufficient to meet *580 the requirements for substantiation, and we therefore hold for respondent on this issue. Issue 7. Casualty loss
On their joint income tax return for 1981, petitioners deducted $1,587.84 as a casualty loss, all of which was disallowed by respondent. It was Jack's testimony that on May 27, 1981, there was a fire in the engine compartment of his automobile. Jack testified that his insurance company would not cover the resulting loss *13 because they concluded that it resulted from "gradual deterioration" of the wires and that the automobile was "too old." Section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated by insurance or otherwise. In the case of losses not incurred in a trade or business or a transaction entered into for profit, section 165(c)(3) limits the losses an individual may claim to those arising from fire, storm, shipwreck or other casualty. The term "casualty" as used in section 165(c)(3), "denotes an accident, a mishap, some sudden invasion by a hostile agency; [and] it excludes the progressive deterioration of property through a steadily operating cause." Fay v. Helvering,120 F.2d 253 (2d Cir. 1941), *581 affg. 42 B.T.A. 206 (1940); Newton v. Commissioner,57 T.C. 245, 246-247 (1971). Petitioner has offered no evidence to prove that the engine compartment fire in his automobile was caused by anything but the progressive deterioration of the vehicle, [9] and we accordingly sustain respondent on this issue. *14 Issue 8. Interest income
Issue 9. Dividend income
For 1980, respondent determined that Jack and Elouise each received interest income in the amount of $118, which they failed to report on their separate returns for that year. For 1981, respondent determined that petitioners received interest income in the amount of $265.43, which they failed to report. For 1980, respondent determined that Jack received dividend income in the amount of $453, which he failed to report. For 1981, respondent determined that petitioners received dividend income, in the amount of $498, which they failed to report. Petitioners do not appear to deny that they received the income in question. Their position is that they were *582 not required to report interest or dividend income not in excess of $200 (in the case of separate returns) or $400 (in the case of a joint return). Petitioners are partly right and partly wrong. For 1980, section 116 granted an exclusion from gross income to each individual of the first $100 of dividend income received. Determining that Jack received $453 in dividend income in 1980, respondent allowed a dividend income exclusion of $200 ($100 for Jack and $100 for Elouise), resulting in total taxable dividend income of $253, or a $127 community property split for Jack and Elouise. For 1980, no exclusion was granted with respect to *15 interest income. For 1980, respondent's determination as to both interest and dividend income is accordingly approved. For 1981, section 116 granted an aggregate exclusion from interest and dividend income combined in the amount of $200 for separate returns and $400 for a joint return. Here, respondent's statutory notice allowed a $200 exclusion with respect to the determined dividend income of $498, but allowed nothing with respect to the interest income. Petitioners are entitled to a further $200 exclusion on their joint return with *583 respect to the combined total of interest and dividend income as determined by respondent. Issue 10. Medical insurance
On his separate return for 1980, Jack claimed a deduction of $150 for insurance premiums paid for medical care. Section 213(a)(2), as in effect for 1980, allowed as a deduction an amount, not in excess of $150, equal to one-half of the medical insurance expenses paid by the taxpayer during the taxable year. Respondent determined that the premiums paid by petitioners totaled $368.60. Determining that this was a community expense, respondent attributed $184.30 to each spouse. Pursuant to section 213(a)(2), one-half of that amount, or $92, was allowed as a deduction to each spouse. No evidence was offered by petitioners to persuade us that there was any error in respondent's foregoing determinations. *16 Issue 11. Naval pension
On his separate return for 1980, Jack reported naval pension income in the amount of $16,161.24. On her separate return for that year, Elouise failed to report any part of this income. Concluding that this was community income, respondent determined that one-half was reportable by Jack, and the other half by Elouise. *584 Petitioners appear to argue that Jack's right to a naval pension was his separate property, acquired by reason of his service at a time when he was single, and that his pension income received in 1980 was his separate income and no community property, so that no part of it was reportable by Elouise. We note, first, that petitioners offered no proof as to when Jack became entitled to his pension, or what his marital status was at that time. Even assuming, however, that it were proved that he acquired the right to his pension in some prior year before he married Elouise, his pension in 1980 would still be community property in Texas, and it is the property law of Texas which governs here. Poe v. Seaborn,282 U.S. 101 (1930). The law of Texas differs somewhat from the law of some other community property states. In Texas there is a distinction between the character of the ownership of property and that of income derived therefrom. The separate property of either husband or wife, after marriage, continues to be the separate property of each, but all income derived therefrom is the community income of the husband and wife. [Citations omitted.] *17 *585 Furthermore, all income acquired by either the husband or wife during marriage is presumed under Texas law to be community income and in order to rebut this presumption there must be evidence that it was not. [Citations omitted.] [Dargan v. Commissioner, a Memorandum Opinion of this Court dated October 6, 1947.] The burden was upon petitioners to show that this income was other than community property when received by Jack in 1980, a year when petitioners concededly were married. This they failed to do, and respondent's determination is sustained. Issue 12. Residential energy credit
On her separate return for 1980, Elouise claimed a residential energy credit of $223.38, all of which was disallowed by respondent. At trial, petitioner testified that he hired a company to install storm doors and windows, but that it was now out of business. Petitioners offered no documentary evidence and no further testimonial evidence on this issue. Section 44C allows an individual a credit for "qualified energy conservation expenditures" and "qualified renewable energy source expenditures." Since petitioner's meager testimony falls short of demonstrating the qualification *586 of the purported expenditures, we hold for respondent on this issue. *18 Issue 13. Employee business expense
For 1980, neither Jack nor Elouise reported any amount as an employee business expense. Respondent allowed Jack an employee business expense in the amount of $411, but determined that this sum was subject to a community property split, resulting in an allowance of $206 to Jack and $206 to Elouise for that year. Petitioners contend first that Jack should be allowed an employee business expense of $206 on his separate return for 1980. As we have found, respondent has already determined this allowance. Petitioners apparently contend further that this expense item should not be subject to a community property split, but should rather be attributed solely to Elouise. Petitioners have offered no evidence to persuade us, however, that this expense item should be excepted from the general rule that in a community property state, like Texas, for Federal income tax purposes, each spouse is entitled to a deduction for one-half of the expenses chargeable against community income. See Johnson v. Commissioner,72 T.C. 340, 347 (1979). Issue 14. Zero *587 bracket amount
Petitioners make certain confusing arguments with respect to their entitlement to the zero bracket amount for the years in issue. For both such years, respondent allowed itemized deductions in excess of the zero bracket amount, and accordingly disallowed use of the zero bracket amount. *19 At to both years, petitioners apparently contend that they were entitled to the zero bracket amount in addition to certain itemized deductions. In computing their taxable income for 1980 and 1981, however, petitioners were entitled to claim "excess itemized deductions," defined as the excess of itemized deductions over the zero bracket amount (which was, in such years, $3,400 in the case of a joint return, and $1,700 in the case of a married individual filing a separate return), rather than the sum of itemized deductions plus the zero bracket amount. Section 63(b), (c), (d). Respondent is accordingly sustained on this issue. Issue 15. Miscellaneous deductions
On his separate return for 1980, Jack deducted a total of $683.50 for miscellaneous deductions. Respondent disallowed all but $125 of this amount, of which $62 was allowed to both Jack and Elouise. *588 Petitioners offered solely documentary evidence consisting of a number of checks, payable to the orders of "Texas Estate Research Center," "Pennwell Books" and "TROA," but they offered no evidence to substantiate that the subject payments were made for a deductible purpose. In the absence of such corroborative evidence, we sustain respondent's determination as to 1980. *20 On their joint return for 1981, petitioners claimed miscellaneous deductions in the total amount of $1,938.25, of which respondent disallowed all but $589.62. As to this claimed deduction, Jack testified solely that he deducted $ .20 per mile for the use of his automobile in connection with repair work done on a house located in Louisiana. Petitioner further testified that the house was owned by a partnership in which he and his sister were partners (presumably, Pugh Realty Co.). Petitioner offered no evidence to show that the claimed expenses were ordinary and necessary to the partnership's business, however, or to corroborate his testimony that the claimed expenses were, by partnership agreement, properly attributable to him and Elouise, rather than to the partnership. Moreover, petitioners' documentary *589 evidence, consisting of a hodgepodge of alleged receipts and log entries, is confusing and unpersuasive. Many such receipts bear 1982 and 1983 dates, and there is no testimonial evidence to connect the material in the documents to the deductions disallowed for 1981. We accordingly sustain respondent on this issue. See section 1.274-5, Income Tax Regs.
Issue 16. Rental expense
On his individual return for 1980, Jack deducted rental expenses in the amount of $3,937.82, of which respondent allowed *21 $3,553.25. As to the difference, in the amount of $384.57, petitioners offered no evidence and we sustain respondent. [10]
Issue 17. Negligence
Under section 6653(a), if any part of an underpayment of income tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Respondent determined additions to tax for negligence, for 1980, against Jack in the amount of $115.65, and for 1981, against Jack and Elouise *590 in the amount of $272.50. As to such determinations, petitioners bear the burden of proving error. Enoch v. Commissioner,57 T.C. 781 (1972). This record establishes that petitioners' books and records were inadequate to support many of their claimed deductions. No reason to explain such inadequacy has been shown. As to many such deductions, petitioners offered no substantiating evidence. As to others, the testimony of their sole witness, Jack, was vague and confusing. Moreover, petitioners failed to present any evidence to prove error in respondent's determinations as to the additions to tax. See Gallagher v. Commissioner,75 T.C. 313, 318 (1980). We therefore conclude that petitioners have failed to prove that no part of their underpayments for 1980 or 1981, *22 was due to their negligence or intentional disregard of rules and regulations. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references herein are to sections of the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all references to Rules are to the Tax Court Rules of Practice and Procedure, unless otherwise stated.↩
2. Petitioners appended to their brief a document, not entered into evidence, purporting to relate to their alleged 1980 contribution. It is clear that such material may not be considered in our evaluation of this issue. Rule 143(b).↩
3. See Pugh v. Commissioner,T.C. Memo. 1981-448↩, involving the same petitioners, but different taxable years.
4. See Frick v. Commissioner,T.C. Memo. 1983-733↩, on appeal (7th Cir. 1984).
5. We note that respondent has failed to explain how his computation was made.↩
6. Respondent also disallowed a deduction for 1981 of $115.46 for interest paid to Old Line Insurance Co., but conceded this item at trial.↩
7. No such form appears in this record.↩
8. On brief, respondent asserts that the charitable deduction for cash↩ contributions claimed by petitioners in 1981, in the total amount of $746.21, was disallowed in full. We believe that this contention is belied by the deficiency notice, however, wherein respondent determined that "Cash contributions are allowed as verified."
9. See Smith v. Commissioner,T.C. Memo. 1979-82, affd. 608 F.2d 321↩ (8th Cir. 1979).
10. Respondent also determined that Elouise failed to report $144 in rental income on her 1980 return. This issue was conceded by petitioners on brief.↩