THOMAS E. ABBOTTS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Abbotts v. Commissioner
Docket No. 27154-83.
United States Tax Court
T.C. Memo 1985-460; 1985 Tax Ct. Memo LEXIS 173; 50 T.C.M. (CCH) 953; T.C.M. (RIA) 85460; September 3, 1985. Vincent L. Alsfeld, for the petitioner. Christine Colley, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a $12,782.09 deficiency in petitioner's income tax and a $648.50 addition to tax under section 6653(a), I.R.C. 1954, for the year 1979. After concessions, the principal issue for decision is whether $3,421.44 in "[w]ages designated as sick leave" were excludable from petitioner's gross income under section 104(a)(1), I.R.C. 1954. The case was submitted *174 fully stipulated. Petitioner was a resident of Wilton, New Hampshire, at the time he filed the petition in this case. Petitioner was employed by the Federal Aviation Administration (FAA) as an air traffic controller until early December 1976, when it was decided that he no longer met the medical requirements of the position. On December 10, 1976, he was thus "temporarily disqualified for ATC [Air Traffic Control] duties". A further medical determination, dated April 4, 1977, found that petitioner "does not meet the retention standards as spelled out" in a certain handbook described as "Neurotic and Personality Disorder". That determination concluded with a statement that petitioner "has a long history of emotional problems requiring medication repeadly [sic] that would interfer [sic] from his safely and efficiently performing the function of his duties". On May 19, 1977, petitioner was permanently disqualified from active air traffic control duties. Such permanent disqualification was set forth in a "Final Notice of Determination to Remove from Active Control Duties", dated May 19, 1977. The notice informed petitioner that since he had requested "second career training" *175 he would be reassigned to a second career training pool. [1] The notice also informed him that since his removal was based on medical reasons, he might be entitled to disability retirement following training, and advised him to complete certain forms for that purpose, to be transmitted within 10 days to the "Personnel Management Division", which in turn would forward them to the Civil Service Commission for approval. The foregoing notice further stated that final action on the approved application would be "held in abeyance pending completion of your retraining and the utilization of accumulated sick leave". The notice finally stated: At least 60 days prior to your completion of training, a determination will be made to reassign you to a position other than as a career controller, transfer *176 or separate you. If separation is necessary your disability retirement application if approved by the Civil Service Commission will be acted upon after your accumulated sick leave has been exhausted. Petitioner completed and transmitted the required forms as set forth in the notice. He had in fact elected to enter the retraining program, and was transferred to it on May 22, 1977. While in the "Second Career Program", petitioner retained the last civil service grade and rate of pay assigned to him as a controller. He had also applied for disability retirement, but, as indicated in the notice of May 19, 1977, final action on that application was "held in abeyance pending the completion of your retraining and the utilization of accumulated sick leave". After approximately two years in the retraining program, no other available position was found for petitioner commensurate with his grade and position. Accordingly, on May 22, 1979, he was put on leave with pay status pending his retirement on July 2, 1979, for disability. He did not immediately retire upon completion of the retraining program because, as already noted, he was required to exhaust all accumulated sick leave prior *177 to receiving any disability retirement payments. Petitioner received $23,348.16 from the FAA in 1979, consisting of $14,319.36 in "Re-Training" wages, a $5,607.36 lump sum annual leave payment and $3,421.44 in "[w]ages designated as sick leave". [2] Petitioner now concedes that the "Re-Training" wages and the annual leave payment are includable in his gross income, but argues that the $3,421.44 sick leave payment is excluded from gross income by section 104(a)(1), I.R.C. 1954. Section 104(a)(1) provides that "gross income does not include * * * amounts received under workmen's compensation acts as compensation for personal injuries or sickness". The Income Tax Regulations have given an expansive interpretation to these provisions in favor of employees by excluding from gross income also payments received "under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment" (emphasis *178 supplied). Section 1.104-1(b), Income Tax Regs. A statute is "in the nature of a workmen's compensation act" if it allows disability payments only in respect of on-the-job injuries or sickness. "A statute will not be considered akin to a workers' compensation act if it allows for disability payments for any reason other than on-the-job injuries". Haar v. Commissioner,78 T.C. 864, 868 (1982), affd. 709 F.2d 1206 (8th Cir. 1983). There is no question, nor has petitioner argued, that the statute under which he received "[w]ages designated as sick leave" was a "workmen's compensation act". It clearly was not. The question is, therefore, was it a "statute in the nature of a workmen's compensation act". We conclude that it was not. The provisions under which petitioner received "[w]ages designated as sick leave", set forth in the margin [3], allow employees sick leave when suffering from any injury or sickness, whether job related or not. In fact, they even allow sick leave when an employee is "required to give care and attendance to a member of his immediate family who is afflicted with a contagious disease". The specific subsection providing *179 benefits in petitioner's case does not limit its benefits to "compensation to employees for personal injuries or sickness incurred in the course of employment" (section 1.104-1(b)), but more broadly allows "sick leave to an employee when the employee * * * [i]s incapacitated for the performance of duties by sickness, injury, or pregnancy and confinement" (5 C.F.R. section 630.401(b) (1979)). Consequently, because the relevant provisions were not limited to compensation in respect of on-the-job injuries or sickness, petitioner can hardly be viewed as receiving benefits under a "statute in the nature of workmen's compensation". Haar v. Commissioner,supra,78 T.C. at 867-868. *180 Petitioner argues that the ultimate cause of his receiving a continuation of payment of his salary as sick leave was "a job related stress injury", and that such payment was therefore excludable under section 104(a)(1) and the regulations. That contention misses the point. To be excludable, the payment must be made under a workmen's compensation act, or under a statute akin thereto, for job related injuries or sickness. The amount received by petitioner for his accumulated sick leave was in no sense paid to him under any such statute, and it is therefore immaterial whether such payment was occasioned by a job related injury or sickness. Rutter v. Commissioner,760 F.2d 466 (2d Cir. 1985), affg. T.C. Memo. 1984-525. Section 104(a)(1) and its liberal interpretation by the regulations are not applicable here. [4]
*181 Moreover, on this record, it is even questionable whether petitioner's medical condition was caused by his job as an air traffic controller. While we think it not unlikely that stress on the job may have affected his medical condition, the record shows that he had a "long history of emotional problems", which, as far as the record discloses, could well have antedated his work as an air traffic controller. The burden was upon him, and he has not established otherwise. Nor has he shown that stress on the job was responsible for exacerbating a nondisabling pre-existing condition to the point that as a consequence he became medically unfit to perform services of an air traffic controller. Cf. Take v. Commissioner,82 T.C. 630 (1984); Take v. Commissioner,T.C. Memo. 1985-388, 50 T.C.M. 600, 54 P-H Memo T.C. par. 85,388 (1985). Finally, in respect of the section 6653(a) addition to tax for negligence, petitioner has in no way shown that the underpayment of tax remaining after the Commissioner's concessions, including that part connected to petitioner's erroneous exclusion from income of his "[w]ages designated as sick leave", was not "due to negligence *182 or intentional disregard of rules and regulations". Section 6653(a). See Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Accordingly, the section 6653(a) addition to tax for negligence is sustained. To reflect concessions, Decision will be entered under Rule 155.
Footnotes
1. The "Second Career Program" was provided pursuant to the Air Traffic Controllers Act, 5 U.S.C. sec. 3381, Pub. L. 92-297, 86 Stat. 141, 142. That program is described in Gallagher v. Commissioner,75 T.C. 313, 315 (1980).See also Watson v. Commissioner,T.C. Memo. 1981-465, 42 T.C.M. 877↩, 878, 50 P-H Memo T.C. par. 81,465 (1981).
2. He also received $9,120 in pension and annuity income during 1979 from the Civil Service Retirement and Disability Fund for the period in 1979 after his retirement became effective.↩
3. Section 6307(a) of Title V of the United States Code provides that an employee (as defined in 5 U.S.C. 6301) "is entitled to sick leave with pay". The regulations thereunder outline the instances when sick leave may be granted, as follows [5 C.F.R. section 630.401 (1979)]: Sec. 630.401 Grant of sick leave. An agency shall grant sick leave to an employee when the employee: (a) Receives medical, dental, or optical examination or treatment; (b) Is incapacitated for the performance of duties by sickness, injury, or pregnancy and confinement; (c) Is required to give care and attendance to a member of his immediate family who is afflicted with a contagious disease; or (d) Would jeopardize the health of others by his presence at his post of duty because of exposure to a contagious disease.↩
4. The Commissioner has suggested that petitioner might have argued that section 105(d), I.R.C. as in effect during 1979, allows the desired exclusion. However, he was correct in concluding that it does not, because petitioner was not "permanently and totally disabled". Haar v. Commissioner,78 T.C. 864, 868 (1982), affd. 709 F.2d 1206 (8th Cir. 1983). Furthermore, the section 105(d)↩ exclusion was subject to a limitation of $100 a week, which would have resulted in a substantially smaller exclusion than the one sought by petitioner here.