JAMES E. AND CLARA J. COVERT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Covert v. Commissioner
Docket No. 27767-88.
United States Tax Court
T.C. Memo 1990-598; 1990 Tax Ct. Memo LEXIS 663; 60 T.C.M. (CCH) 1302; T.C.M. (RIA) 90598; 13 Employee Benefits Cas. (BNA) 1039; November 21, 1990, Filed *663 Decision will be entered for the respondent. In 1985, P-husband received disability benefits from a disability plan established by his employer. The disability plan resulted from a negotiated labor contract. The disability benefits were not paid pursuant to a State worker's compensation statute and were paid without regard to whether the injury was work related. Ps also received a payment from the State Teacher's Retirement System of Ohio. Held, the disability benefits are not excludable from gross income under I.R.C. sec. 104(a)(1). Held further, the amount received from the State Teacher's Retirement System of Ohio is not excludable from gross income. Held further, Ps are liable for additions to tax under I.R.C. secs. 6653(a)(1), 6653(a)(2), and 6661(a). Vincent L. Alsfeld, for the petitioners. Robert M. Finkel, for the respondent. NIMS, Chief Judge. NIMS
MEMORANDUM OPINION Respondent determined a deficiency in and additions to petitioners' Federal income tax for 1985 as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661(a)
$ 10,041.00
$ 502.05
*
$ 2,510.25
(Unless otherwise indicated, all section references are to the Internal Revenue *665 Code in effect for 1985. All Rule references are to the Tax Court Rules of Practice and Procedure.) The issues for decision are whether: (1) petitioners may exclude the disability benefits they received in 1985 from gross income under section 104(a)(1); (2) petitioners may exclude the payment they received from the State Teacher's Retirement System of Ohio from gross income; and (3) petitioners are liable for additions to tax under sections 6653(a)(1), 6653(a)(2), and 6661(a). The parties submitted this case fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time of filing their petition, petitioners James E. and Clara J. Covert resided in Amherst, New Hampshire. On July 7, 1986, petitioners, as husband and wife, filed a joint Federal income tax return for 1985. Since 1959, James E. Covert (petitioner) has been employed as an airline pilot for Allegheny Airlines, Inc. (Allegheny). Allegheny is now known as U.S. Air. On November 21, 1972, Allegheny entered into a contractual agreement (the agreement) with the Air Line Pilots Association, International. Under the agreement, Allegheny was required to *666 establish a disability plan for its pilots. The disability plan was to provide monthly disability benefits to "a pilot who becomes disabled prior to his normal retirement date." Allegheny agreed to bear the full cost of this disability plan. On January 1, 1975, in accordance with the terms of the agreement, Allegheny established the "Pilot Disability Benefit Monthly Income Plan" (the Plan). The preamble of the Plan states that Allegheny adopted the Plan to establish "financial benefits [for the pilot and his dependents] against the contingency of untimely disability that shall prevent the pilot from engaging in his occupation." To fund its obligation under the Plan, Allegheny purchased a disability insurance policy from CIGNA Employee Benefits Company (CIGNA), an affiliate of Connecticut General Life Insurance Company. As a result of this policy, CIGNA became the Plan's third-party payor of the disability benefits. CIGNA, however, was not Allegheny's workmen's compensation insurance carrier. (We use the somewhat outdated term"workmen's compensation" herein, rather than "worker's compensation," because the exhibits and the pertinent statute are so worded.) The Plan provides *667 in part as follows: If sickness or accidental bodily injury disables a covered pilot so that he is unable to perform the duties of his occupation or if he fails to pass his FAA physical examination as a result of such injury or sickness, * * * monthly income in an amount determined from the Schedule of Benefits will be paid. * * *
A pilot who is permanently and totally disabled receives each month 50 percent of his average monthly earnings on the date the disability commences. A pilot is considered to be permanently and totally disabled for purposes of the Plan when his condition qualifies him for disability benefits under the Federal Social Security Act. The monthly benefit payment is annually adjusted for increases in the cost of living. The cost-of-living adjustment is determined by increases in the consumer price index, with a ceiling on the maximum adjustment equal to 33 percent of the initial payment. The Plan does not require that a pilot's disability arise from work-related injuries for a pilot to qualify for disability benefits. Pilots who qualify for disability benefits are not required to assign their rights to workmen's compensation benefits to Allegheny. *668 Moreover, the pilot's monthly disability benefits are not reduced by any workmen's compensation benefits secured by the pilot. On December 28, 1977, petitioner suffered a heart attack. On January 18, 1978, petitioner informed Allegheny of his heart attack and requested disability benefits under the Plan from the Pilot's Retirement Board. On May 23, 1978, the Pilot's Retirement Board granted petitioner's request and determined that his disability benefits would begin to accrue from the effective date of his disability, which was set at July 1, 1978. On June 9, 1978, Allegheny submitted a claim to CIGNA on petitioner's behalf. The documents submitted to CIGNA included petitioner's letter of request for disability, a medical statement from his doctor, and the approval letters from the Pilot's Retirement Board. Thereafter, petitioner retained private counsel and filed for workmen's compensation benefits. This action was entirely independent of his request for disability benefits under the Plan. Petitioner's counsel advised petitioner that pursuing his claim for workmen's compensation benefits "would in no way prejudice [his] claim for disability benefits, nor for social security. *669 " Petitioner's counsel informed petitioner that the workmen's compensation claim would be processed through the Hartford Insurance Company, Allegheny's workmen's compensation insurance carrier. Petitioner received from the Hartford Insurance Company a copy of the "Employer's First Report of Injury" and completed the report. Subsequently, petitioner's counsel consulted with the doctors who treated petitioner for his heart attack to determine whether his heart attack had been job related. Petitioner was unable to obtain a medical opinion showing that his heart attack was caused by job-related stress. As a result, petitioner apparently ceased to pursue his workmen's compensation claim. Petitioner was paid the following amounts by CIGNA under the Plan: Year
Amount
1978
$ 21,071.12
1979
36,121.92
1980
37,115.22
1981
38,228.63
1982
39,375.44
1983
40,556.72
1984
41,773.44
1985
43,026.67
1986
44,317.49
1987
45,646.98
1988
47,016.44
1989
47,966.18
During 1985, the year in issue, petitioner received disability benefits in the amount of $ 43,026.67 from CIGNA under the Plan. The parties have stipulated that the disability benefits paid to *670 petitioner under the Plan were not paid pursuant to any State workmen's compensation statute nor were they paid pursuant to any other statute. During 1985, petitioners received $ 250 from the State Teacher's Retirement System of Ohio. On their 1985 joint Federal income tax return, petitioners reported the $ 43,026.67 in disability benefits received from CIGNA on line 17(a) as "Other pensions and annuities including rollovers." Petitioners, however, reported the taxable amount of the benefits as zero on line 17(b). Petitioners made no other disclosure with respect to the benefits on their 1985 income tax return nor was any statement attached thereto. Petitioners did not report the $ 250 they received from the State Teacher's Retirement System of Ohio. In his notice of deficiency, respondent determined that petitioners: (1) should have included the $ 43,026.67 received from CIGNA in gross income; (2) should have included the $ 250 received from the State Teacher's Retirement System of Ohio in gross income; and (3) were liable for additions to tax under sections 6653(a)(1), 6653(a)(2), and 6661(a). The Disability Benefits
The first issue for decision is whether the *671 disability benefits received by petitioner during 1985 are excludable from gross income under section 104(a)(1). Petitioners assert that the disability benefits are excludable from gross income under section 104(a)(1) because they were paid under a statute in the nature of a workmen's compensation act for a work-related physical injury. Respondent contends that the disability benefits are not excludable from gross income under section 104(a)(1) because the benefits were not paid under a workmen's compensation act or any statute in the nature of a workmen's compensation act. We agree with respondent. In general, gross income includes "all income from whatever source derived." Sec. 61(a). However, amounts received under a workmen's compensation act for personal injuries or sickness are excluded from gross income. Sec. 104(a)(1). Section 1.104-1(b), Income Tax Regs., provides in part as follows: Section 104(a)(1) excludes from gross income amounts which are received by an employee under a workmen's compensation act * * * or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred *672 in the course of employment. * * * Section 104(a)(1) * * * does not apply to amounts which are received as compensation for a nonoccupational injury or sickness. * * * [Emphasis added.]
Section 104(a)(1) excludes from gross income amounts received under a workmen's compensation act or a statute in the nature of a workmen's compensation act. The parties stipulated that the disability benefits were not received under a State workmen's compensation statute. Therefore, we must determine whether petitioners received the disability benefits under a "statute in the nature of a workmen's compensation act" within the meaning of section 1.104-1(b), Income Tax Regs.
In order to qualify under the regulation, petitioners first must show that the disability benefits were received under a "statute" and that statute is "in the nature of a workmen's compensation act." Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985), affg. per curiam T.C. Memo. 1984-525;sec. 1.104-1(b), Income Tax Regs. Petitioners then must show that the disability benefits were received for an injury incurred in the course of employment. Sec. 1.104-1(b), Income *673 Tax Regs. As set out below, petitioners have failed to satisfy these requirements. The parties stipulated that the disability benefits were not paid pursuant to a State workmen's compensation statute or "any other statute." (Emphasis added.) Petitioner received the disability benefits under a plan established pursuant to a labor contract. Disability benefits paid under a labor contract are not paid under a statute within the meaning of section 1.104-1(b), Income Tax Regs.Rutter v. Commissioner, supra at 468.Thus, petitioner did not receive disability benefits under a statute. Even if we were to find that the disability benefits were received under a statute, the Plan was not a statute in the nature of a workmen's compensation act. A statute is considered to be in the nature of a workmen's compensation act if it limits the disability benefits only to job-related injuries. Rutter v. Commissioner, supra at 468; Take v. Commissioner, 82 T.C. 630, 634 (1984), affd. 804 F.2d 553 (9th Cir. 1986); Haar v. Commissioner, 78 T.C. 864, 868 (1982), affd. per curiam 709 F.2d 1206 (8th Cir. 1983). *674 A statute must also preclude an employee from filing an independent claim for workmen's compensation benefits to be in the nature of a workmen's compensation act. See Gallagher v. Commissioner, 75 T.C. 313, 316-317 (1980); Blackburn v. Commissioner, 15 T.C. 336 (1950). In the present case, the Plan made no distinction between work-related and nonwork-related injuries. A disabled pilot who is unable to perform his duties is eligible for disability benefits regardless of the cause of such disability. The Plan also does not preclude a pilot from filing a workmen's compensation claim. In fact, petitioner actually pursued a workmen's compensation claim independent from his disability claim under the Plan. Thus, because the Plan does not limit benefits to job-related disabilities nor preclude pilots from filing an independent workmen's compensation claim, the Plan is not a statute in the nature of a workmen's compensation act. Section 1.104-1(b), Income Tax Regs., also requires that the disability benefits be received for an injury incurred in the course of employment. The record contains no evidence that petitioner's heart attack was incurred in the *675 course of his employment. On the contrary, the record reveals that petitioner was unable to obtain a medical opinion showing that his heart attack was job related. Thus, petitioners have failed to show that the disability benefits were received due to a job-related injury. The foregoing analysis demonstrates that the disability benefits were not paid under a statute in the nature of a workmen's compensation act for a job-related injury. Accordingly, we hold that the disability benefits received by petitioner in 1985 are not excludable from gross income under section 104(a)(1). In the alternative, petitioners assert that the disability benefits are excludable from gross income under section 105(c) because the benefits were received under an accident or health plan. In their petition, petitioners did not allege that the disability payments were excludable from gross income under section 105(c). Petitioners' counsel first raised this issue in a pretrial memorandum submitted two weeks beyond the due date prescribed in the Court's Standing Pretrial Order served on the parties approximately five months before the date set for commencement of the trial session at which this case *676 was to be tried. At the call of the calendar, the Court ruled that petitioners' arguments would be limited to the assignment of errors set forth in their petition. Thus, respondent did not address the section 105(c) issue in his brief. Accordingly, we decline to consider whether petitioners may exclude the disability benefits from gross income under section 105(c) because this issue was untimely raised and improperly pleaded. See 508 Clinton Street Corp. v. Commissioner, 89 T.C. 352, 353 n.2 (1987); Estate of Mandels v. Commissioner, 64 T.C. 61, 73 (1975). The State Teacher's Retirement System of Ohio Payment
The next issue for decision is whether petitioners must include in gross income the $ 250 they received from the State Teacher's Retirement System of Ohio. It is well established that respondent's deficiency determination is presumed to be correct, and petitioners bear the burden of proving that respondent's determinations are erroneous. Rule 142(a). In their petition, petitioners allege that they "did not receive the money in question. The payment was a death benefit paid to the estate of the petitioner's mother." The record *677 contains no evidence that would support petitioners' position. In addition, petitioners have failed to make any argument on brief against respondent's determination and therefore are deemed to have conceded this issue. See, e.g., Theodore v. Commissioner, 38 T.C. 1011, 1041 (1962); Miami Valley Coated Paper Co., 28 T.C. 492, 497 (1957). Accordingly, we hold that petitioners must include the $ 250 they received from the State Teacher's Retirement System of Ohio in gross income. Additions to Tax
Respondent determined that petitioners are liable for the negligence additions to tax under section 6653(a)(1) and (2). Section 6653(a)(1) imposes an addition to tax equal to five percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) imposes an additional liability of 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules and regulations. Negligence is defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would due under the circumstances. *678 " Neely v. Commissioner, 85 T.C. 934, 947 (1985), quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and a Memorandum Opinion of this Court. The record contains no evidence and petitioners have failed to make any argument on brief with respect to this issue, which is therefore deemed conceded. See, e.g., Theodore v. Commissioner, supra at 1041;Miami Valley Coated Paper Co. v. Commissioner, supra at 497. Accordingly, we hold that petitioners are liable for the additions to tax under section 6653(a)(1) and (2). Respondent also determined that petitioners are liable for the addition to tax under section 6661(a). Section 6661(a) imposes an addition to tax when there is a "substantial understatement of income tax for any taxable year." As applicable here, the rate of the addition to tax under section 6661(a) is equal to 25 percent of the underpayment attributable to the substantial understatement. Pallottini v. Commissioner, 90 T.C. 498 (1988). Section 6661(b)(2)(A) defines "understatement" to mean the excess of *679 the amount of tax required to be shown on the return over the amount of tax actually reported on the return. This understatement will be "substantial" if the amount of such understatement exceeds the greater of 10 percent of the amount of tax required to be shown on the return for the taxable year, or $ 5,000. Sec. 6661(b)(1)(A). The amount of the understatement, however, is reduced by the portion of the understatement attributable to any nontax shelter item for which there was either substantial authority for the taxpayer's return position or adequate disclosure of the relevant facts affecting such item's tax treatment. Sec. 6661(b)(2)(B). Petitioners bear the burden of proving that the addition to tax under section 6661(a) determined in the notice of deficiency is not applicable. Rule 142(a). Petitioners have failed to make any argument on brief with respect to this issue, which is therefore deemed conceded. Accordingly, we hold that petitioners are liable for the addition to tax under section 6661(a). To reflect the foregoing, Decision will be entered for the respondent. Footnotes
*. 50 percent of the interest payable on the deficiency.↩